# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> GENESIS HEALTH VENTURES, INC., et al., <br><br> Debtors, | Chapter 11 <br><br> Case No. 00-2692 (JHW) <br> (Jointly Administered) |
| MELLON BANK, N.A., <br> Plaintiff, <br> v. <br><br> NEIGHBORCARE, INC., <br><br> Defendant. | Adv. Proc. No. 04-_____ (JHW) |

## COMPLAINT FOR DECLARATORY RELIEF

Mellon Bank, N.A. ("Mellon"), by its co-counsel, Morgan, Lewis & Bockius LLP and Klett Rooney Lieber & Schorling, A Professional Corporation, as and for its complaint against NeighborCare, Inc. ("NeighborCare"), alleges as follows:

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the "Standing Order of Referral of Cases to Bankruptcy Judges" for the District of Delaware, dated July 23, 1984.

2. Venue of this case and this adversary proceeding in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

# PARTIES

4. Mellon is a national banking association with headquarters in Pittsburgh, Pennsylvania.

5. On information and belief, NeighborCare is the successor in interest to Genesis Health Ventures, Inc. and is a corporation organized under the laws of the Commonwealth of Pennsylvania which provides health care and support services to the elderly.

# FACTS

## A. The Bankruptcy Case and DIP Agreement

6. On June 22, 2000, Genesis Health Ventures, Inc. and certain of its direct and indirect subsidiaries (collectively, "Genesis") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court.

7. Mellon, as administrative agent (the "Agent") for those lenders (the "Lenders") party thereto, the Lenders and Genesis entered into that certain Credit and Guaranty Agreement dated as of June 22, 2000 (the "DIP Agreement"), whereby Mellon and the Lenders, relying on the provisions of that agreement, provided debtor-in-possession financing to Genesis up to a maximum amount of $250,000,000 (the "DIP Loan"). Relevant sections of the DIP Agreement are attached hereto as Exhibit A.

8. Section 10.06 of the DIP Agreement obligates Genesis to indemnify Mellon with respect to claims in any way related to the DIP Agreement or DIP Loan. Specifically, Section 10.06 provides:

The Borrower[1] and each of the Guarantors[2] agree to indemnify and hold harmless the Agent, and the Banks[3] and their directors, officers, employees, agents and Affiliates (each an "Indemnified Party") from and against any and all expenses, losses, claims, damages and liabilities incurred by such Indemnified Party arising out of claims made by any Person *in any way relating to the transactions contemplated hereby*, but excluding therefrom all expenses, losses, claims, damages, and liabilities to the extent that they are determined by the final judgment of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of such Indemnified Party. *The obligations of the Borrower and the Guarantors under this Section shall survive the termination of this Agreement and/or the payment of the Loans.* (Emphasis added.)

9. Sections 2.26 and 10.05 of the DIP Agreement further obligates Genesis to pay or reimburse Mellon <u>upon demand</u>, for any and all liability and expenses, including attorneys' fees, that Mellon incurs in connection with the claims for which it is indemnified. Specifically, the DIP Agreement provides as follows:

> Section 2.26:
>
> Subject to the provisions of Section 7.01, upon the maturity (whether by acceleration or otherwise) of any of the Obligations[4] under this Agreement or any of the other Loan Documents of the Borrower and the Guarantors, the Banks shall be entitled to immediate payment of such Obligations without further application to or order of the Bankruptcy Court.

---

[1] "Borrower" is defined in the DIP Agreement as Genesis Health Ventures, Inc. <u>See</u>, Section 1.01.

[2] "Guarantors" is defined in the DIP Agreement as each of the direct and indirect subsidiaries of the Borrower signatory to the DIP Agreement. <u>See</u>, Section 1.01.

[3] "Banks" is defined in the DIP Agreement as the Agent and the Lenders. <u>See</u>, Section 1.01.

[4] "Obligations" is defined in the DIP Agreement to include, <u>inter alia</u>, the due and punctual payment of all present and future, fixed or contingent, monetary obligations of Genesis to the Agent and the Lenders thereunder. <u>See</u>, Section 1.01.

<u>Section 10.05</u>:

> Whether or not the transactions hereby contemplated shall be consummated, the Borrower and the Guarantors agree to pay all reasonable out-of-pocket expenses incurred by the Agent .... ***Such payments shall be made on the Closing Date and thereafter on demand, promptly upon delivery of a statement setting forth such costs and expenses .... The obligations of the Borrower and the Guarantors under this Section shall survive the termination of this Agreement and/or the payment of the Loans.*** (Emphasis added.)

10. On July 18, 2000, this Court approved the DIP Agreement and entered its Final Order (I) Authorizing Debtors to (A) Obtain Post-Petition Financing pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), and 364(d)(1) and (B) Utilize Cash Collateral Pursuant to 11 U.S.C. § 363 and (II) Granting Adequate Protection To Pre-Petition Secured Parties (the "Final DIP Order").

11. In its Final DIP Order, the Court provided that Genesis' obligations with respect to the DIP Agreement and DIP Loan, including its indemnification obligation to Mellon, were not subject to discharge under Section 1141 of the Bankruptcy Code pursuant to any subsequent order confirming a plan of reorganization. Specifically, paragraph 24 of the Final DIP Order states:

> [T]he obligations of the Debtors under this Order and the Financing shall not be discharged by the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to Section 1141(d)(4) of the Code, the Debtors have waived such discharge with respect to such obligations.

The relevant excerpt of the Final DIP Order is attached hereto as Exhibit B.

12. Thereafter, this Court, by order dated September 20, 2001 (the "Confirmation Order"), confirmed Genesis' joint plan of reorganization (the "Plan"). At that time, the outstanding balance of the DIP Loan was in the approximate amount of $200,000,000. <u>See</u>

Disclosure Statement for Debtors' Joint Plan of Reorganization, dated July 6, 2001, § II.G.1, the relevant excerpt of which is annexed as Exhibit C.

13. In its Confirmation Order, the Court confirmed that Genesis' indemnification obligations to Mellon, among other things, survived confirmation of the Plan and were not discharged. Specifically, paragraph 46 of the Confirmation Order provides for payment of all amounts outstanding under the DIP Agreement and, upon such payment, for termination of said Agreement **"except as otherwise provided in the [DIP Agreement]."** (Emphasis added). The relevant excerpt of the Confirmation Order is attached hereto as Exhibit D.

## B. The Haskell Litigation

14. On or about January 27, 2004, approximately 275 former holders of Genesis' subordinated debentures commenced an action against NeighborCare (sued as Genesis Health Ventures, Inc.), Goldman, Sachs & Co., Mellon, Highland Capital Management, L.P., and George V. Hager, in the Supreme Court for the State of New York (the "Haskell Litigation"). The complaint in the Haskell Litigation (the "Complaint") asserts claims for fraud, conspiracy to commit fraud and gross negligence based on alleged misrepresentations of financial data submitted to the Court and parties in interest in connection with proceedings relating to the confirmation of the Plan. A copy of the Complaint is annexed hereto as Exhibit E.

15. The Haskell Litigation was removed by the defendants to the United States District Court for the Southern District of New York, and by stipulation and order, thereafter transferred to the United States District Court for the District of Delaware. By order dated April 27, 2004, the Haskell Litigation was referred to this Court. On July 16, 2004, a hearing was held before this Court on motions to dismiss the Complaint, which motions are currently sub judice.

16. The Complaint asserts, among other things, that Mellon, as part of a senior lender group, including in its role as Agent under the DIP Agreement, acted and conspired to act with the other defendants in a manner that allegedly caused injury to the plaintiffs. The Complaint expressly references the DIP Agreement, the DIP Loan and Mellon's role as Agent in connection therewith, in alleging, among other things, that the DIP Loan was extended in furtherance of the alleged fraud or conspiracy that forms the basis of the claims. See, e.g., ¶¶ 154-157, 161, 165, 167, 185 of the Complaint.

17. The claims asserted against Mellon in the Haskell Litigation constitute "claims made by any Person in any way relating to the [DIP Agreement]" as provided in Section 10.06 of the DIP Agreement. Accordingly, Mellon is entitled to indemnification under the DIP Agreement for all liability and expenses including attorneys' fees, it incurs in connection with the Haskell Litigation.

## C. **Demand for Indemnification**

18. By letters dated February 10, 2004, March 16, 2004 and April 1, 2004 Mellon demanded that NeighborCare reimburse Mellon for expenses incurred by Mellon in defending the Haskell Litigation, including attorneys' fees. Copies of said letters are attached hereto as Exhibit F.

19. By letters dated March 1, 2004 and March 25, 2004, NeighborCare admitted that the indemnification obligations under the DIP Agreement survived confirmation of the Plan and were not discharged, but nevertheless, declined to indemnify Mellon for expenses it incurs in connection with the Haskell Litigation. Copies of said letters are attached hereto as Exhibit G.

## AS AND FOR A CLAIM FOR DECLARATORY RELIEF

20. Mellon incorporates and realleges paragraphs 1 through 19 as if fully set forth herein.

21. Pursuant to the DIP Agreement, NeighborCare, as successor in interest to Genesis, is obligated pursuant to Section 10.06 of the DIP Agreement to indemnify and reimburse Mellon for any and all liability and expenses, including attorneys' fees, incurred by Mellon in connection with the claims alleged in the Haskell Litigation.

22. Mellon made demand upon NeighborCare for such indemnification and payment of expenses, including attorneys' fees, but NeighborCare refused and continues to refuse to provide such indemnification or payment of expenses, including attorneys' fees.

23. There is an actual case in controversy.

24. Mellon has no adequate remedy at law.

25. Accordingly, Mellon is entitled to a judgment declaring that NeighborCare is obligated, pursuant to the DIP Agreement, to indemnify Mellon upon demand for any liability, costs and expenses, including attorneys' fees, incurred by Mellon in connection with the Haskell Litigation.

WHEREFORE, Mellon requests that this Court enter a declaratory judgment finding that NeighborCare is obligated, pursuant to the DIP Agreement, to indemnify Mellon upon demand for any liability, costs and expenses, including attorneys' fees, incurred by Mellon in connection with the Haskell Litigation, and granting Mellon such other and further relief as is just and proper.

Dated: Wilmington, Delaware
September 2, 2004

**KLETT ROONEY LIEBER & SCHORLING,**
**A Professional Corporation**

By: _____
Teresa K.D. Currier (No. 3080)
Mark R. Owens (No. 4364)
1000 West Street, Suite 1410
Wilmington, DE 19801
Telephone: (302) 552-4200
Facsimile: (302) 552-4295

- and -

Richard S. Toder, Esq.
Menachem O. Zelmanovitz, Esq.
Ron Baskin, Esq.
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

Co-Counsel for Mellon Bank, N.A.