# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>GENESIS HEALTH VENTURES, INC., et al.,<br><br>Debtors, | Jointly Administered<br>Case No. 00-2692 (JHW)<br><br>Chapter 11 |
| MELLON BANK, N.A.,<br><br>Plaintiff,<br><br>v.<br><br>NEIGHBORCARE, INC.,<br><br>Defendant. | Adv. Proc. No. 04-55080 (JHW)<br><br>Objection Deadline: 11/18/04 at 4:00 p.m.<br><br>Hearing Date: To be determined |

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on November 4, 2004, Defendant NeighborCare, Inc. (formerly Genesis Health Ventures, Inc. (the "Debtor" or "Genesis") filed the attached **Defendant Neighborcare, Inc.'s Motion to Dismiss Complaint for Declaratory Relief** (the "Motion"), with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the Motion must be filed in writing with the Bankruptcy Court, 824 Market Street, 6th Floor, Wilmington, Delaware 19801, and served upon and received by the undersigned counsel on or before **November 18, 2004 at 4:00 p.m.**

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion may, at the Court's discretion, be scheduled to be held on a date to be determined, before the Honorable

Judith H. Wizmur, U.S. Bankruptcy Court, Mitchell H. Cohen Courthouse, 4th & Cooper Streets, Room 2020, Camden, New Jersey 08101.

IF NO OBJECTIONS TO THE MOTION ARE TIMELY FILED, SERVED AND RECEIVED IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

Dated: November 4, 2004
       Wilmington, Delaware

*/s/ Russell C. Silberglied*

Mark D. Collins (No. 2981)
Russell C. Silberglied (No. 3462)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Michael F. Walsh
Gary T. Holtzer
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

ATTORNEYS FOR THE REORGANIZED DEBTORS

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>GENESIS HEALTH VENTURES, INC., et al.,<br><br>Debtors, | Jointly Administered<br>Case No. 00-2692 (JHW)<br><br>Chapter 11 |
| MELLON BANK, N.A.,<br><br>Plaintiff,<br><br>v.<br><br>NEIGHBORCARE, INC.,<br><br>Defendant. | Adv. Proc. No. 04-55080 (JHW) |

## DEFENDANT NEIGHBORCARE, INC.'S
## MOTION TO DISMISS COMPLAINT FOR DECLARATORY RELIEF

TO THE HONORABLE JUDITH H. WIZMUR:

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Rule 7012(b) of the Rules of Bankruptcy Procedure, Defendant NeighborCare, Inc. (formerly Genesis Health Ventures, Inc. (the "Debtor" or "Genesis") now known as "NeighborCare") hereby submits this motion to dismiss Plaintiff's complaint in its entirety for failure to state a claim. Plaintiff's demand for indemnification is not supported by the unambiguous provisions of the agreement at issue. The reasons for granting this motion are fully set forth below.

### I. PRELIMINARY STATEMENT

1. Mellon Bank, N.A. ("Mellon") seeks a declaration that an indemnification provision contained in an agreement that provided Genesis debtor in possession financing (the "DIP Financing Agreement") has been triggered by the filing of the complaint by Richard Haskell and certain other former creditors of Genesis, which alleges that Mellon, Genesis, and

others committed fraud or were grossly negligent in connection with the confirmation of Genesis' chapter 11 plan of reorganization (the "Haskell Complaint"). All defendants in that action have moved to dismiss the Haskell Complaint in its entirety and with prejudice on numerous grounds, including for failure to state a claim and failure to plead fraud with requisite particularity.

2. Under a plain reading of the indemnification provision at issue, NeighborCare is simply not obligated to indemnify Mellon for any costs, expenses or liabilities it has incurred, or may incur, as a consequence of the Haskell Complaint.

3. First, the indemnification provision contained in the DIP Financing Agreement is only triggered in the event there are claims against Mellon that relate to "the transactions contemplated" under the DIP Financing Agreement – in other words, the lending of money to Genesis and the repayment of that money to the lenders under the DIP Financing Agreement. The Haskell Complaint does not trigger the indemnification provision because the claims alleged against Mellon in that lawsuit are not related in any way to the debtor in possession financing. Rather, the Haskell Complaint alleges that Mellon engaged in fraud and gross negligence in conspiring with Genesis to undervalue the Company, supposedly causing the Haskell plaintiffs (former debenture holders) to receive "next to nothing" under Genesis' plan of reorganization. A plain and common sense reading of the indemnity provision does not permit indemnification for losses or expenses related to such claims.

4. Moreover, the indemnification provision specifically excludes from coverage any expenses, losses, claims, damages, and liabilities that are determined to have resulted from "gross negligence or willful misconduct." Since the Haskell Complaint alleges that Mellon committed fraud and gross negligence in the undervaluing of Genesis, any expenses

related to the defense of the Haskell Complaint are, by the plain terms of the indemnification provision, expressly excluded from coverage.

5. Finally, nothing in the relevant DIP Financing Agreement requires NeighborCare to advance defense costs, as claimed by Mellon. Even if Mellon could establish any entitlement to indemnification for these non-debtor in possession-related claims – which it clearly cannot – the terms of the DIP Financing Agreement provide that Mellon must first await final judgment on the Haskell Complaint to ascertain the extent of any indemnifiable liabilities and expenses.

6. For all these reasons, Mellon's Complaint should be dismissed.

## II. RELEVANT BACKGROUND

7. Mellon was the administrative agent under Genesis' Fourth Amended and Restated Credit Agreement, dated as of August 20, 1999 (the "Pre-petition Credit Agreement"). Genesis' obligations under the Pre-petition Credit Agreement were secured by substantially all of its assets.

8. On June 22, 2000, Genesis and certain of its direct and indirect subsidiaries filed voluntary petitions with this court commencing chapter 11 cases under title 11 of the United States Code (the "Bankruptcy Code"). As part of the chapter 11 cases, Mellon, on behalf of itself and the other lenders under the Pre-petition Credit Agreement, asserted claims against Genesis in excess of $1 billion.

9. On July 18, 2000, this Court approved the DIP Financing Agreement under section 364 of the Bankruptcy Code, which provided for maximum borrowings of $250 million during the chapter 11 cases. Mellon was the agent under the DIP Financing Agreement. Relevant sections of the DIP Financing Agreement are attached as Exhibit A to Mellon's Complaint for Declaratory Relief ("Complaint").

10. Section 10.06 of the DIP Financing Agreement provides that Genesis will indemnify Mellon on a limited basis for liabilities, costs, expenses, and other obligations incurred pursuant to claims "relating to the transactions contemplated" by the DIP Financing Agreement.

11. On September 20, 2001, this Court signed an order confirming Genesis' chapter 11 plan. The plan became effective shortly thereafter.

12. On January 27, 2004, approximately 275 former subordinated debenture holders filed the Haskell Complaint, which has since been properly removed and transferred to this Court. The Haskell Complaint makes several allegations against Mellon, each of which is wholly unrelated to the DIP Financing Agreement. In particular, the Haskell Complaint alleges that Mellon engaged in fraud, conspiracy to commit fraud, and gross negligence to improperly undervalue Genesis so as to improve Mellon's standing as a pre-petition lender (to the detriment of the plaintiffs to the Haskell Complaint) in connection with the confirmation of Genesis' plan of reorganization.

13. On September 2, 2004, Mellon filed a Complaint for Declaratory Relief, asserting the conclusory and unsupported position that Genesis is obligated under the DIP Financing Agreement to indemnify Mellon for expenses it incurs and any liabilities it may incur in connection with the Haskell Complaint.

### III. APPLICABLE STANDARD

14. A motion to dismiss under Rule 12(b)(6) must be granted where, as here, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Rottlund Homes of New Jersey, Inc. v. Saul, Ewing, Remick & Saul, L.L.P., 243 F. Supp. 2d 145, 156 (D. Del. 2003) (quoting Conley v. Gibson, 355 U.S. 41, 45 (1957)). While the Court is required to accept well-pled allegations in the Complaint as true,

"conclusory allegations unsupported by any factual assertions . . . cannot withstand a motion to dismiss." CareFirst of Maryland, Inc. v. Care First Transp., Inc., No. Civ.A. 02-229 (MPT), 2002 WL 31500927, at *3 (D. Del. Nov. 1, 2002).

15. Similarly, the Court "is not required to accept legal conclusions either alleged or inferred in the pleaded facts." Rottlund Homes of New Jersey, Inc., 243 F. Supp. 2d at 156 (quoting Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993)). The Third Circuit recently confirmed that:

> courts have an obligation in matters before them to view the complaint as a whole and to base rulings not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justifiable. We do draw on the allegations of the complaint, but in a realistic, rather than a slavish, manner.

Maio v. Aetna, Inc., 221 F.3d 472, 485 n.12 (3d Cir. 2000) (quoting City of Pittsburgh, 147 F.3d at 263). The result is that "courts are not required to credit bald assertions or legal conclusions improperly alleged in the complaint." In re Rockefeller Center Props, Inc. Sec. Litig., 311 F.3d 198, 216 (3d Cir. 2002).

## IV. ARGUMENT

16. Just because Mellon alleges that the indemnity provision of the DIP Financing Agreement has been triggered by the Haskell Complaint does not make it so. Rather, the clear, unambiguous language of the indemnification provision requires the opposite conclusion: no indemnification rights have been triggered here. Specifically, as discussed below, the plain language of the indemnification provision clearly states that it is not triggered by claims, such as those asserted in the Haskell Complaint, that are unrelated to the lending arrangements under the DIP financing. Second, the indemnification provision expressly disclaims any indemnification of fraud/gross negligence claims (including any expense costs related to such claims), such as the claims raised by the Haskell Complaint. Finally, even if

NeighborCare did have an obligation to indemnify Mellon for its defense costs of the Haskell Complaint, Mellon's claim for such indemnity is premature and unripe.

### A. Mellon's Complaint Must Be Dismissed Because Mellon Is Not Indemnified Under The DIP Financing Agreement for the Claims Alleged Against Mellon In The Haskell Complaint.

17. The DIP Financing Agreement obligates NeighborCare to indemnify Mellon <u>only</u> for claims that are related to the Genesis' debtor in possession financing, not for unrelated claims of fraud, conspiracy to commit fraud, and gross negligence asserted in the Haskell Complaint.

18. In pertinent part, the indemnification clause of the DIP Financing Agreement states the following:

> SECTION 10.06 <u>Indemnity</u>. [NeighborCare] and each of the Guarantors agree to indemnify and hold harmless [Mellon] . . . from and against any and all expenses, losses, claims, damages and liabilities incurred by [Mellon] arising out of claims made by any Person in any way <u>relating to the transactions contemplated hereby</u>, but excluding therefrom all expenses, losses, claims, damages, and liabilities to the extent that they are determined by the final judgment of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of [Mellon]. (Emphasis added).

19. Mellon takes the position that the phrase "in any way relating to the transactions contemplated hereby" should be construed expansively to mean that the indemnity provision is triggered by <u>any</u> claim against Mellon that involves the Genesis chapter 11 bankruptcy while it was a lender under the DIP Financing Agreement. Thus, Mellon argues that, because it was a lender under that facility at the time it is alleged to have committed fraud in connection with Genesis' plan confirmation, it should be entitled to indemnification. But the express language of the DIP Financing Agreement does not provide Mellon the broad blanket indemnification protection it seeks. Put another way, Mellon's flawed interpretation of the

indemnity provision conflicts with both the plain language of the indemnification clause and the contractual legal principles that govern the interpretation of the DIP Financing Agreement.

20. In cases of general contract interpretation,[1] courts have routinely stated that "when the words of a contract are clear, [the courts] will not give them a meaning that conflicts with that of the language actually used." Am. Contractors Ins. Group v. Harleysville Mut. Ins. Group, 2003 WL 22389428, at *6 (Pa. Com. Pleas Sept. 17, 2003); Sullivan v. Commonwealth, 798 A.2d 481, 484 (Pa. 1998). On the interpretation of indemnification clauses, "when the terms of the contract are clear and unambiguous, the intent of the parties is to be discovered from the express language of the agreement." Jack Greenberg, Inc. v. Grant Thorton LLP, 1997 WL 860673, at *7 (Bankr. E.D. Pa. Dec. 12, 1997) (finding an indemnification clause unambiguous) (citing Kiewit E. Co. v. L & R Const. Co., 44 F.3d 1194, 1199 (3d Cir. 1995) (applying Pennsylvania law in construing an indemnification agreement)).

21. Here, the express terms of the indemnification provision make clear that it is only triggered when the claims against Mellon relate to the "transactions contemplated" by the DIP Financing Agreement. The only "transactions contemplated" by the DIP Financing Agreement were (1) the lending of money to Genesis on a superpriority and senior secured basis during its chapter 11 case and (2) the repayment of those loans on or before certain dates specified in Genesis' plan of reorganization. As such, only claims against Mellon that arise out of Mellon's DIP loan to Genesis and/or the repayment of that loan could ever trigger the indemnification provision.

---

[1] Pursuant to section 10.07 of the DIP Agreement, entitled "Choice of Law," the laws of the State of Pennsylvania govern interpretation of the Agreement.

22. The claims asserted against Mellon in the Haskell Complaint[2] do not take issue in any way with the debtor in possession financing or the terms of repayment. Rather, the Haskell Complaint alleges that Mellon engaged in fraud, conspiracy to commit fraud, and gross negligence by understating the value of Genesis, ultimately improving Mellon's recovery as a pre-petition lender under the Pre-petition Credit Agreement. In fact, the Haskell Complaint only mentions the DIP Financing Agreement in passing, acknowledging its existence and identifying it as a source of post-petition financing for Genesis. See Exhibit E to the Complaint at ¶¶ 154-57, 161, 165, 167, 185. Nowhere does the Haskell Complaint allege any impropriety by either Mellon or Genesis/NeighborCare with respect to entering into or carrying out the DIP Financing Agreement or in the repayment of the loan thereunder. Id.

23. Indeed, no matter what valuation was given to the Debtor's estate, all amounts borrowed under the DIP Financing Agreement, as administrative expenses in Genesis' chapter 11 case, would have had to have been repaid in full <u>before</u> any prepetition obligations. Since a ruling on the Haskell Complaint would have no impact whatsoever on the loans under the DIP Financing Agreement or their repayment, the claims raised by the Haskell Complaint cannot be said to be related in any way to the "transactions contemplated" by the DIP Financing Agreement. As such, the indemnity provision is not implicated and no payment is owed Mellon.

**B. Mellon's Claims Must Be Dismissed Because the DIP Financing Agreement Expressly Disclaims Indemnification for Mellon's Acts of Gross Negligence and Willful Misconduct.**

24. In addition to limiting NeighborCare's indemnification obligation to a set of narrow circumstances, section 10.06 of the DIP Financing Agreement expressly disclaims any

---

[2] It is well-settled law that, on a motion to dismiss, a movant may cite to documents attached to exhibits to the complaint. See, e.g., Estate of Gleiberman, No. 03-3319, 2004 U.S. App. LEXIS 7570, at **5-6 (3d Cir. Apr. 19, 2004) ("In reviewing a motion to dismiss, we may also consider exhibits attached to and incorporated into the complaint.").

duty to indemnify Mellon for liabilities and/or expenses, including attorney's fees, that result from conduct found to constitute "gross negligence or willful misconduct." This is the exact conduct alleged against Mellon in the Haskell Complaint. Exhibit E to the Complaint at ¶¶ 182-97. As a result, even if the scope of the indemnity provision could be interpreted to include the claims against Mellon as agent and lender under the DIP Financing Agreement (which it cannot, see supra), NeighborCare has no obligation to indemnify because the nature of those claims are expressly excluded from indemnification.

25. It is well-settled that plaintiffs who seek indemnity for their own willful and negligent misconduct can do so only where an indemnification clause expresses a "clear and unequivocable" intent to cover such conduct. Consolidated Coal Co. v. Liberty Mut. Ins. Co., 406 F. Supp. 1292, 1299 (W.D. Pa. 1976); see also Hershey Foods Corp. v. Gen. Elec. Serv. Co., 619 A.2d 285, 288 (Pa. Super. 1992) (an indemnification clause covering all claims "arising out of or resulting from" one party's performance did not include negligence). Here, the narrowly drafted indemnity provision does not evince an intent to cover any illegal conduct by Mellon that involves fraud or gross negligence. Instead, the agreement explicitly disclaims any obligation to indemnify Mellon for claims arising out of its gross negligence or willful misconduct.

26. The expansive reading advocated by Mellon is also improper in light of the Third Circuit's ruling in In re United Artists Theatre Co., 315 F.3d 217, 234 (3d Cir. 2003), which held that it was "out of bounds for acceptable public policy" for a party to attempt to bargain for indemnification for its own gross negligence. Since Mellon could not have bargained for an indemnification provision that would cover the claims asserted by the Haskell Complaint, it certainly cannot seek to rewrite the provision through the present action.

## C. Even Assuming Arguendo That Mellon's Claims Fall Under The Indemnification Provision, It Is Premature To Seek Advancement Of Costs And Expenses.

27. Even if a colorable nexus could be established between the Haskell Complaint and the DIP Financing Agreement (and if the "willful misconduct" clause were not a bar to indemnification), NeighborCare would still not be obligated to advance litigation defense costs to Mellon at this time. Senior Tour Players 207 Management Co., LLC., v. Golftown 207 Holding Co., LLC., 2004 WL 550743 * 2, No. Civ. A. 20116 (Del. Ch. Mar. 10, 2004) ("advancement and indemnification, although obviously related, are distinct types of legal rights and . . . the right to advancement is not ordinarily dependent upon a determination that the party in question will ultimately be entitled to be indemnified.") (internal quotation omitted); Advanced Mining Sys., Inc. v. Fricke, 623 A.2d 82, 84 (Del. Ch. 1992) (distinguishing a mandate to indemnify from a mandate to advance expenses "[b]ecause I consider indemnification rights and rights to advancement of possibly indemnifiable expenses to be legally quite distinct types of legal rights. . . .").

28. Section 10.06 provides that NeighborCare has no duty to indemnify for damages and expenses on claims against Mellon that "are determined by the final judgment of a court of competent jurisdiction to have resulted from gross negligence or willful misconduct." Section 10.06 does not provide for advancement of defense costs or any other advancements in connection with Genesis' indemnity obligations. As such, even if the Haskell claims fell under the indemnification provision (which they do not), NeighborCare would have no duty to pay Mellon's defense costs until those claims have been fully and finally adjudicated.

29. Since there has been no such final judgment, NeighborCare can have no present duty to indemnify Mellon for its defense costs relating to the Haskell Complaint.

## V. WAIVER OF MEMORANDUM OF LAW

30. This Motion does not raise any novel issues of law and the legal basis for the requested relief is set forth above. Accordingly, Movants respectfully request that the Court waive the requirement contained in the local Bankruptcy Rules that a separate memorandum of law be submitted.

## VI. CONCLUSION

31. For the foregoing reasons, Movants request an order dismissing Mellon's Complaint in its entirety with prejudice.

Dated: November 4, 2004
Wilmington, Delaware

Respectfully submitted,

_Russell P. Silberglied_
Mark D. Collins (No. 2981)
Russell C. Silberglied (No. 3462)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Michael F. Walsh
Diane Harvey
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

-and-

Christine P. Hsu
WEIL, GOTSHAL & MANGES LLP
1501 K Street, NW, Suite 100
Washington, DC 20005
(202) 682-7000

*Attorneys for the Reorganized Debtors*

# CERTIFICATE OF SERVICE

I, Russell C. Silberglied, hereby certify that on November 4, 2004, I caused copies of the foregoing **Defendant Neighborcare, Inc.'s Motion to Dismiss Complaint for Declaratory Relief** to be served upon the attached list in the manner indicated.

*Russell C. Silberglied*
Russell C. Silberglied (No. 3462)

## Service List

*Via Hand Delivery*

Teresa K.D. Currier, Esquire
Klett Rooney Lieber & Schorling
The Brandywine Building
1000 West Street, Suite 1401
Wilmington, DE 19801


*Via First Class Mail*

Christine P. Hsu
WEIL, GOTSHAL & MANGES LLP
1501 K Street, NW, Suite 100
Washington, DC 20005

*Via Federal Express*

Menachem O. Zelmanovitz
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, New York 10178-0060