# EXHIBIT H

# SUPREME COURT OF THE STATE OF NEW YORK
# COUNTY OF NEW YORK

NEW YORK
COUNTY CLERK'S OFFICE

JAN 27 2004

NOT COMPARED
WITH COPY FILED

RICHARD HASKELL, JAMES W. BAKER IRA by
JAMES W. BAKER, JOHN A. ROBINSON, PATRICK
T. ROONEY FAMILY LLC CORP. by 1st NAT BANK OF
OK, M & M LP 1st TENN by 1st TENN BANK FL3,
CHARLES M. ALBERTO JR., RICHARD D.
ALMEROTH, CONSTANCE L. ALMEROTH, DONNA
KAYE ALVEY, DONNA K. ALVEY IRA by DONNA K.
ALVEY, MADISON ARNOLD, LI JUN WANG, JOSEPH
S. AUCELLO, CAROLYN L. AUCELLO, SCOTT A.
BAKER ROTH IRA by SCOTT A. BAKER, JAMES W.
BAKER III ROTH IRA by JAMES W. BAKER III,
JAMES W. BAKER JR., JAMES W. BAKER III UGMA
GA by JAMES W. BAKER JR., SCOTT ARTHUR
BAKER UGMA GA by JAMES W. BAKER JR.,
ROBERT M. BAKER MD P.S.P. by ROBERT M.
BAKER MD, WILEY P. BALLARD JR., STUART A.
BARBOUR JR., BARGAIN BOOKS & MUSIC,
RICHARD L. BARONE, ALICE L. BARONE, LINDSEY
H. BARRON, DAVID M. BATCHELOR, NATALIE J.
BATCHELOR, SHERRY LYNN BENGTSON, JUDITH
BERNHANG, JOHN BERWECKY by FRANCES
BERWECKY, GEORGE BIRNBAUM, SUSAN
BIRNBAUM, JOHN C. BISHOP, ELIZABETH L.
BISHOP, RICHARD K. BLUM, RUTH M. BLUM, LEO
BOEKMAN & ASSOCIATES LP by LEO BOEKMAN,
EDLYNE B. BOYER, EDLYNE B. BOYER IRA by
EDLYNE B. BOYER, MICHAEL F. BOYER, MICHAEL
BOYER IRA by MICHAEL F. BOYER, LYMAN C.
BRAND, ALAN BRESLER, DAVID BROWN, ANN
NOBLE BROWN, BRUSH & CO., WILLIAM J.
BURNSIDE, KELLIE LEN BURNSIDE IRR TRUST by
WILLIAM J. BURNSIDE, HELEN C. BURNSIDE IRR
TRUST by WILLIAM J. BURNSIDE, ANTONIO
CAPONE IRA by ANTONIO CAPONE, HOWARD

(caption continued on next page)

Index No. 04101317

Plaintiff designates
NEW YORK COUNTY

The basis of venue is one or more of
the parties resides or has a place of business in
this County.

## SUMMONS

LD-519
JAN 30 2004
Served by
Earl English
of Empire
Investigations
10:45 a.m.

MICHAELS by CARLTON GROUP, DONNA CASH, JOHN D. CESARE, ELMA CESARE, RAYMOND F. CHANEY, STAN CHARLSE, LILLIAN H. CHENEY, DIANE CLEMENTE, ALLEN W. CLOSE, THOMAS COLLENTINE, JUDITH COLLENTINE, DOROTHY A. CONNELLY, JAMES B. CONNELLY IRA by JAMES B. CONNELLY , ROBERT L. COUNCIL, THEO C. COUNCIL, KATHRYN G. CRAVERO TR by KATHRYN G. CRAVERO, WILEY M. CRITTENDEN JR., OLIVER H. DALE, PARKS H. DALTON, JAMES DAVIES, PHILIP H. DAVIS, BRIAN J. DAVIS UGTMAGA by PHILIP H. DAVIS, MARY G. DAVIS by PHILIP H. DAVIS, PHILIP H. DAVIS III TRUST by PHILIP H. DAVIS, RAY DAVIS, DOROTHY DAVIS, PAUL DEPUTY, RICHARD S. DIAMOND, MERLE DINKINS TRUST by MERLE DINKINS, CHARLES DOGGETT, FRANK DONNELLY, MILDRED DONNELLY, TIMOTHY J. DONOHUE, JULIE M. DONOHUE, LAWRENCE W. DRINKARD, SHYAM DUBE, C. MARSHALL DUKE, EMILY B. DUNAGIN TRUST by EMILY B. DUNAGIN, JAMES L. DUNAGIN JR. TRUST by EMILY B. DUNAGIN, AMY MARGARET DUNAGIN UOKUTMA by EMILY B. DUNAGIN, JANE LEIGH DUNAGIN UOKUTMA by EMILY B. DUNAGIN, EMILY B. DUNAGIN IRA by EMILY B. DUNAGIN, JAMES L. DUNAGIN JR. IRA by JAMES L. DUNAGIN JR., ELIZABETH F. EGAN IRA by ELIZABETH F. EGAN, FRANCIS C. EGAN, ELIZABETH F. EGAN, JEFFREY ELLNER IRA by JEFFREY ELLNER, NANCY ENNIS, JOHN S. SCHWARZSCHILD TRUST by EXEC. CONSULTANTS INC., BEVERLY S. CLARK TRUST by EXEC. CONSULTANTS INC., ROBERT B. FABER, CHARLES R. FAIRES, SANDRA J. FAIRES, VICTOR FALECK,

(caption continued on next page)

GAIL FALECK, ALFRED J. FANTINI, MARY A. FANTINI, MARTIN FARBENBLUM, DALE R. FEENEY, IRVING FELDBAUM, BARBARA FELDMAN, RICHARD FELDMAN, MELVIN FELDMAN IRA by MELVIN FELDMAN, THOMAS T. FOLGER JR., JAMES H. FOSTER, LAUREN FOUROS, SAMUEL FRIEDLAND TRUST by SAMUEL E. FRIEDLAND, BARR H. GARDNER C/F B GARDNER by BARR H. GARDNER, BARR H. GARDNER III, JULIA A. GASAWAY, ROBERT D. GASAWAY III, FLORA B. GIFFUNI TRUST by FLORA GIFFUNI, HAROLD L. GILBERT, ART GITTELMAN, MARCIA J. PEARL, RAYMOND J. GLASS, JOHN GLOUSE IRA by JOHN GLOUSE, GMS GROUP LLC ATLANTA TRADING ACCT by GMS GROUP LLC, GOLDMAN FAMILY TRUST by HAROLD S. GOLDMAN, JUDITH GOODMAN REV TR by JUDITH H. GOODMAN, SAMUEL GORENSTEIN, A GOTTSCHO RET PLAN by EVA GOTTSCHO, ACCURSIO GRAFFEO, LANA GRAFFEO, CHARLES LIVINGSTON GRIMES, KELLY HASKELL, SUSAN S. HASKELL, RICHARD C. HASKELL JR, AMY K. HASKELL, LOUISE I G IRELAND TRUST by CHARLES L. GRIMES, GADFLY FOUNDATION by CHARLES L. GRIMES, C. YVONNE COOKE by CHARLES L. GRIMES, JANE G. BROWN by CHARLES L. GRIMES, SERENA R. SCHWARTZ by CHARLES L. GRIMES, GORDON W. CHAPLIN by CHARLES L. GRIMES, MICHAEL GROSKIN, MORTON GURRENTZ, H.G. REYNOLDS CO., INC., CHARLES HAASE, PATRICIA HAASE, PATRICIA A. HAASE, PATRICIA HAASE JT, BRIANNE HAASE, MYRTLE E. HARKER, HOMER J. HARKER, M.L. JARVIS INC. by MARGARET HATHAWAY, RICHARD S. HATHAWAY IRA by RICHARD S. HATHAWAY, RICHARD SANFORD HATHAWAY, CHARLES M. HENDERSON, JOHN A. HENDERSON

(caption continued on next page)

M.D., HAH LTD. PARTNERSHIP by HYMAN HERSHMAN, ALVIN HERTZBERG TRUST by NINA HERTZBERG, J. DAVID HIGGINS JR. IRA by J. DAVID HIGGINS JR., EDITH G. HUDGINS R T by ELWYN H. HUDGINS, MERRIWAY TRAVEL by KURT HUEBNER, JOHN M. HUSTON, EILEEN C. HUSTON, THOMAS S. IULO, LORI B. IULO, IVEY JACKSON IRA by BEN IVEY JACKSON, SOLOMON JACOBS TRUST by SOLOMON JACOBS, CHARLES H. JESSEPH, MURRAY L. KAUFMAN, LINDA B. KAUFMAN, MASAJI KELLEY, FLEETWOOD INVESTMENTS L P by MORTON KENT, JOSEPH H. KOCH REV TR by JOSEPH H. KOCH SR., PAUL R. KONSIG, PAUL R. KONSIG IRA by PAUL R. KONSIG, ERIC R. KORB, DAVID KOROSTOFF, EDGAR A. KOVNER, G. RICHARD KRUGER by GLYNN R. KRUGER, THOMAS L. LALLY JR., JO ANN LALLY, ROBERT LANDE, ANITA LANDE, EDWIN H. LEIPZIG, JEFFREY LENZI, MARK B. LEVY IRA by MARK B. LEVY, JOHN LEWIS, LINDA LEWIS, MATHEW J. LISENBY, SPENCER LEE LISENBY, STEPHEN ALAN LISENBY, PATRICIA J. LISENBY, STEVE A. LISENBY by STEVE A. LISENBY JR., YSY, LTD by LOGBERG ASSOCIATES, HARTLEY LORD, TERI L. LOTT, DAVID F. LOTT, ELLEN LOWE, RICHARD LOWE, ROBERT LYONS IRA by ROBERT A. LYONS, DAVID THOMPSON MACMILLAN, J. S. MAJ TRUST by JANE S. MAJ, DAVID P. MAKRIS, KATHLEEN MAKRIS, KENNETH MARKS IRA by KENNETH MARKS, FRANK N. MARTINO, BETTY MARTINO, ALVIN MATZER, GLORIA MATZER, MCCORMICK FAMILY TRUST by JAMES R. MCCORMICK, FRANK MCGANN, LAURA MCGANN IRA by LAURA MCGANN, MCGRATH FAMILY TRUST by WILLIAM J. MCGRATH, HERMAN MEINDERS, ASCHER LAWRENCE MESTEL IRA by ASCHER L. MESTEL, CRAIG W. MILLER, CRAIG W.

(caption continued on next page)

MILLER D.C. PLAN by CRAIG W. MILLER, CRAIG MILLER DEF. PEN. PLAN by CRAIG W. MILLER, CRAIG W. MILLER IRA FBO by CRAIG W. MILLER, CRAIG W. MILLER ROTH IRA by CRAIG W. MILLER, FLORENCE S. MITCHELL, ROBERT E. MONTANA, WALTER S. MONTGOMERY JR., MOTIVATIONAL ASSOC M P PLAN by MOTIVATIONAL ASSOC. c/o GMS, ALBERT NATHANSON, SANDRA NATHANSON, JOE L. NESBITT, LEONARD OCHS, COLETTA OCHS, RONALD E. OSTBLOM, ELLEN BOYER, RODNEY OWENS, CATHY S. PAGE, SERENE PENG, LINDSEY PERRY, MARTIN PLOTNIK, JOHN J. QUANN, JOHN J. QUANN JT, EILEEN S. QUANN, BEATRICE RADIN, ETHEL RAFFELOCK, NANCY REA, JOAN G. READER, MALCOLM C. READER, RONALD REED, PATRICIA REED, BRANDON A. REYNOLDS, SUSAN L. ALTMAN, E. LELAND REYNOLDS, JEFFREY REYNOLDS, REBECCA REYNOLDS, MARY G. RICHARDSON, JOE F. RILEY, DAVID M. ROBINSON IRA by DAVID M. ROBINSON, KILDONAN PARTNERS by JOHN A. ROBINSON, ROBINSON EYE PROFIT SHARE by JOHN A. ROBINSON, PATRICIA R. ROBINSON IRA by PATRICIA R. ROBINSON, ROCK REVOCABLE TRUST by REINHART F. ROCK, ROSENBERG TRUST by LUDWIG ROSENBERG, BONNIE RUBEN, RAMADA PLAZA HOTEL by BONNIE RUBEN, RUDOLPH P. RUSSO, JEAN M. RUSSO, FRANK S. RUSSO ALESI IRA by FRANK S. RUSSO-ALESI, CATHERINE C. GARDNER by JAMIE G. RUTAN, ALFRED SAKS, WANDA J. SCHAFFNER, WANDA J. SCHAFFNER IRA by WANDA J. SCHAFFNER, GEORGE SCHNEIDER, HILTON SCHWARTZ, JOREMI ENTERPRISES INC P.S.P. by HILTON SCHWARTZ, STUART SCHWARZCHILD,

(caption continued on next page)

KATHERINE RAE CLARK UGTMA by STUART SCHWARZSCHILD, JEAN B. SHERROD, MARGARET W. SHUTTLEWORTH REV TR by MARGARET W. SHUTTLEWORTH, STANLEY SOMMER REV LIVING TRUST by STANLEY SOMMER, FRED SOUSSA, ALEXANDER C. SPEYER JR., MARC SPURR, SUSAN SPURR, MURRAY STADTMAUER, MICHAEL STEETS, MILLICENT STEETS, PAUL STEETS, SARA KAVANAUGH, EILEEN STEETS QUANN, ALLAN H. STEPHENS, SUSAN H. STEPHENS, ARTHUR F. STOLKEY TRUST by ARTHUR F. STOLKEY, ARTHUR F. STOLKEY, THOMAS STOLKEY, STRYK FAMILY INVESTMENTS LTD by STRYK MGMT INC., CHRISTINE STUCKER, DAVID STUCKER, MARY ROSE STUCKER, GILBERT SUNSHINE, WILLIAM H. SWAN, ROBERT B. SYMPSON JR., MR TS ONNON LLC by GEORGE THOLKE, CAROLINE THORNE, DOROTHY THORNE, KATHERINE THORNE, MARILYN TOMESKO, BEN TREADWAY, HANS F. TRUPP, JOHN F. VELTER, WALTER VOLMAR, LARRY WADDINGTON, JOHN W. WALDEN, JOHN W. WALDEN IRA by JOHN A. WALDEN, DAVID C. WATKINS, BRYAN J. WEINSTEIN by CAREN WEINSTEIN, IRVING WELSTED, VIRGINIA WELSTED, DOUGLAS J. WHITAKER, MARY M. WHITAKER, RODNEY L. WHITE TRUST by RODNEY WHITE, WINCHELL FAMILY TRUST by VERNE H. WINCHELL, CHARLES R. WOODS IRA by CHARLES R. WOODS, GAIL D. WOODS MELONI, and SEYMOUR ZALDIN TRUST by SEYMOUR ZALDIN,

Plaintiffs,

-v.-

(caption continued on next page)

6

| GOLDMAN SACHS & CO., MELLON BANK, N.A., HIGHLAND CAPITAL MANAGEMENT, L.P., GENESIS HEALTH VENTURES, INC., and GEORGE V. HAGER, |
| --- |
| Defendants. |

**To the above named Defendant(s)**

*YOU ARE HEREBY SUMMONED* to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to service a Notice of Appearance, on the Plaintiff's Attorney within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgement will be taken against you by default for the relief demanded in the complaint.

DATED:  New York, New York
         January 27, 2004

DEFENDANTS' ADDRESSES:

Goldman Sachs & Co.
85 Broad Street, Grnd Floor
New York, NY 10004-2456

MELLON BANK, N.A.
One Mellon Center
Pittsburgh, PA 15258

HIGHLAND CAPITAL MANAGEMENT, L.P.
Two Galleria Tower
13455 Noel Road, Suite 1300
Dallas, TX 75240

Genesis Health Ventures, Inc.
101 East State Street
Kennett Square, PA 19348-3109

George V. Hager
c/o Genesis Health Ventures, Inc.
101 East State Street
Kennett Square, PA 19348-3109

**Pomerantz Haudek Block Grossman
& Gross LLP**
Attorneys for Plaintiffs
Office and Post Office Address
100 Park Avenue, 26th Floor
New York, New York 10017-5516
(212) 661-1100

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

RICHARD HASKELL, JAMES W. BAKER IRA by
JAMES W. BAKER, JOHN A. ROBINSON, PATRICK
T. ROONEY FAMILY LLC CORP. by 1ˢᵗ NAT BANK OF
OK, M & M LP 1ˢᵗ TENN by 1ˢᵗ TENN BANK FL3,
CHARLES M. ALBERTO JR., RICHARD D.
ALMEROTH, CONSTANCE L. ALMEROTH, DONNA
KAYE ALVEY, DONNA K. ALVEY IRA by DONNA K.
ALVEY, MADISON ARNOLD, LI JUN WANG, JOSEPH
S. AUCELLO, CAROLYN L. AUCELLO, SCOTT A.
BAKER ROTH IRA by SCOTT A. BAKER, JAMES W.
BAKER III ROTH IRA by JAMES W. BAKER· III,
JAMES W. BAKER JR., JAMES W. BAKER III UGMA
GA by JAMES W. BAKER JR., SCOTT ARTHUR
BAKER UGMA GA by JAMES W. BAKER JR.,
ROBERT M. BAKER MD P.S.P. by ROBERT M.
BAKER MD, WILEY P. BALLARD JR., STUART A.
BARBOUR JR., BARGAIN BOOKS & MUSIC,
RICHARD L. BARONE, ALICE L. BARONE, LINDSEY
H. BARRON, DAVID M. BATCHELOR, NATALIE J.
BATCHELOR, SHERRY LYNN BENGTSON, JUDITH
BERNHANG, JOHN BERWECKY by FRANCES
BERWECKY, GEORGE BIRNBAUM, SUSAN
BIRNBAUM, JOHN C. BISHOP, ELIZABETH L.
BISHOP, RICHARD K. BLUM, RUTH M. BLUM, LEO
BOEKMAN & ASSOCIATES LP by LEO BOEKMAN,
EDLYNE B. BOYER, EDLYNE B. BOYER IRA by
EDLYNE B. BOYER, MICHAEL F. BOYER, MICHAEL
BOYER IRA by MICHAEL F. BOYER, LYMAN C.
BRAND, ALAN BRESLER, DAVID BROWN, ANN
NOBLE BROWN, BRUSH & CO., WILLIAM J.
BURNSIDE, KELLIE LEN BURNSIDE IRR TRUST by
WILLIAM J. BURNSIDE, HELEN C. BURNSIDE IRR
TRUST by WILLIAM J. BURNSIDE, ANTONIO
CAPONE IRA by ANTONIO CAPONE, HOWARD

**COMPLAINT**

**Index No.**

(caption continued on next page)

MICHAELS by CARLTON GROUP, DONNA CASH, JOHN D. CESARE, ELMA CESARE, RAYMOND F. CHANEY, STAN CHARLSE, LILLIAN H. CHENEY, DIANE CLEMENTE, ALLEN W. CLOSE, THOMAS COLLENTINE, JUDITH COLLENTINE, DOROTHY A. CONNELLY, JAMES B. CONNELLY IRA by JAMES B. CONNELLY , ROBERT L. COUNCIL, THEO C. COUNCIL, KATHRYN G. CRAVERO TR by KATHRYN G. CRAVERO, WILEY M. CRITTENDEN JR., OLIVER H. DALE, PARKS H. DALTON, JAMES DAVIES, PHILIP H. DAVIS, BRIAN J. DAVIS UGTMAGA by PHILIP H. DAVIS, MARY G. DAVIS by PHILIP H. DAVIS, PHILIP H. DAVIS III TRUST by PHILIP H. DAVIS, RAY DAVIS, DOROTHY DAVIS, PAUL DEPUTY, RICHARD S. DIAMOND, MERLE DINKINS TRUST by MERLE DINKINS, CHARLES DOGGETT, FRANK DONNELLY, MILDRED DONNELLY, TIMOTHY J. DONOHUE, JULIE M. DONOHUE, LAWRENCE W. DRINKARD, SHYAM DUBE, C. MARSHALL DUKE, EMILY B. DUNAGIN TRUST by EMILY B. DUNAGIN, JAMES L. DUNAGIN JR. TRUST by EMILY B. DUNAGIN, AMY MARGARET DUNAGIN UOKUTMA by EMILY B. DUNAGIN, JANE LEIGH DUNAGIN UOKUTMA by EMILY B. DUNAGIN, EMILY B. DUNAGIN IRA by EMILY B. DUNAGIN, JAMES L. DUNAGIN JR. IRA by JAMES L. DUNAGIN JR., ELIZABETH F. EGAN by ELIZABETH F. EGAN, FRANCIS C. EGAN, ELIZABETH F. EGAN, JEFFREY ELLNER IRA by JEFFREY ELLNER, NANCY ENNIS, JOHN S. SCHWARZSCHILD TRUST by EXEC. CONSULTANTS INC., BEVERLY S. CLARK TRUST by EXEC. CONSULTANTS INC., ROBERT B. FABER, CHARLES R. FAIRES, SANDRA J. FAIRES, VICTOR FALECK,

(caption continued on next page)

2

GAIL FALECK, ALFRED J. FANTINI, MARY A. FANTINI, MARTIN FARBENBLUM, DALE R. FEENEY, IRVING FELDBAUM, BARBARA FELDMAN, RICHARD FELDMAN, MELVIN FELDMAN IRA by MELVIN FELDMAN, THOMAS T. FOLGER JR., JAMES H. FOSTER, LAUREN FOUROS, SAMUEL FRIEDLAND TRUST by SAMUEL E. FRIEDLAND, BARR H. GARDNER C/F B GARDNER by BARR H. GARDNER, BARR H. GARDNER III, JULIA A. GASAWAY, ROBERT D. GASAWAY III, FLORA B. GIFFUNI TRUST by FLORA GIFFUNI, HAROLD L. GILBERT, ART GITTELMAN, MARCIA J. PEARL, RAYMOND J. GLASS, JOHN GLOUSE IRA by JOHN GLOUSE, GMS GROUP LLC ATLANTA TRADING ACCT by GMS GROUP LLC, GOLDMAN FAMILY TRUST by HAROLD S. GOLDMAN, JUDITH GOODMAN REV TR by JUDITH H. GOODMAN, SAMUEL GORENSTEIN, A GOTTSCHO RET PLAN by EVA GOTTSCHO, ACCURSIO GRAFFEO, LANA GRAFFEO, CHARLES LIVINGSTON GRIMES, KELLY HASKELL, SUSAN S. HASKELL, RICHARD C. HASKELL JR, AMY K. HASKELL, LOUISE I G IRELAND TRUST by CHARLES L. GRIMES, GADFLY FOUNDATION by CHARLES L. GRIMES, C. YVONNE COOKE by CHARLES L. GRIMES, JANE G. BROWN by CHARLES L. GRIMES, SERENA R. SCHWARTZ by CHARLES L. GRIMES, GORDON W. CHAPLIN by CHARLES L. GRIMES, MICHAEL GROSKIN, MORTON GURRENTZ, H.G. REYNOLDS CO., INC., CHARLES HAASE, PATRICIA HAASE, PATRICIA A. HAASE, PATRICIA HAASE JT, BRIANNE HAASE, MYRTLE E. HARKER, HOMER J. HARKER, M.L. JARVIS INC. by MARGARET HATHAWAY, RICHARD S. HATHAWAY IRA by RICHARD S. HATHAWAY, RICHARD SANFORD HATHAWAY, CHARLES M. HENDERSON, JOHN A. HENDERSON

(caption continued on next page)

3

M.D., HAH LTD. PARTNERSHIP by HYMAN HERSHMAN, ALVIN HERTZBERG TRUST by NINA HERTZBERG, J. DAVID HIGGINS JR. IRA by J. DAVID HIGGINS JR., EDITH G. HUDGINS R T by ELWYN H. HUDGINS, MERRIWAY TRAVEL by KURT HUEBNER, JOHN M. HUSTON, EILEEN C. HUSTON, THOMAS S. IULO, LORI B. IULO, IVEY JACKSON IRA by BEN IVEY JACKSON, SOLOMON JACOBS TRUST by SOLOMON JACOBS, CHARLES H. JESSEPH, MURRAY L. KAUFMAN, LINDA B. KAUFMAN, MASAJI KELLEY, FLEETWOOD INVESTMENTS L P by MORTON KENT, JOSEPH H. KOCH REV TR by JOSEPH H. KOCH SR., PAUL R. KONSIG, PAUL R. KONSIG IRA by PAUL R. KONSIG, ERIC R. KORB, DAVID KOROSTOFF, EDGAR A. KOVNER, G. RICHARD KRUGER by GLYNN R. KRUGER, THOMAS L. LALLY JR., JO ANN LALLY, ROBERT LANDE, ANITA LANDE, EDWIN H. LEIPZIG, JEFFREY LENZI, MARK B. LEVY IRA by MARK B. LEVY, JOHN LEWIS, LINDA LEWIS, MATHEW J. LISENBY, SPENCER LEE LISENBY, STEPHEN ALAN LISENBY, PATRICIA J. LISENBY, STEVE A. LISENBY by STEVE A. LISENBY JR., YSY, LTD by LOGBERG ASSOCIATES, HARTLEY LORD, TERI L. LOTT, DAVID F. LOTT, ELLEN LOWE, RICHARD LOWE, ROBERT LYONS IRA by ROBERT A. LYONS, DAVID THOMPSON MACMILLAN, J. S. MAJ TRUST by JANE S. MAJ, DAVID P. MAKRIS, KATHLEEN MAKRIS, KENNETH MARKS IRA by KENNETH MARKS, FRANK N. MARTINO, BETTY MARTINO, ALVIN MATZER, GLORIA MATZER, MCCORMICK FAMILY TRUST by JAMES R. MCCORMICK, FRANK MCGANN, LAURA MCGANN IRA by LAURA MCGANN, MCGRATH FAMILY TRUST by WILLIAM J. MCGRATH, HERMAN MEINDERS, ASCHER LAWRENCE MESTEL IRA by ASCHER L. MESTEL, CRAIG W. MILLER, CRAIG W.

(caption continued on next page)

4

MILLER D.C. PLAN by CRAIG W. MILLER, CRAIG MILLER DEF. PEN. PLAN by CRAIG W. MILLER, CRAIG W. MILLER IRA FBO by CRAIG W. MILLER, CRAIG W. MILLER ROTH IRA by CRAIG W. MILLER, FLORENCE S. MITCHELL, ROBERT E. MONTANA, WALTER S. MONTGOMERY JR., MOTIVATIONAL ASSOC M P PLAN by MOTIVATIONAL ASSOC. c/o GMS, ALBERT NATHANSON, SANDRA NATHANSON, JOE L. NESBITT, LEONARD OCHS, COLETTA OCHS, RONALD E. OSTBLOM, ELLEN BOYER, RODNEY OWENS, CATHY S. PAGE, SERENE PENG, LINDSEY PERRY, MARTIN PLOTNIK, JOHN J. QUANN, JOHN J. QUANN JT, EILEEN S. QUANN, BEATRICE RADIN, ETHEL RAFFELOCK, NANCY REA, JOAN G. READER, MALCOLM C. READER, RONALD REED, PATRICIA REED, BRANDON A. REYNOLDS, SUSAN L. ALTMAN, E. LELAND REYNOLDS, JEFFREY REYNOLDS, REBECCA REYNOLDS, MARY G. RICHARDSON, JOE F. RILEY, DAVID M. ROBINSON IRA by DAVID M. ROBINSON, KILDONAN PARTNERS by JOHN A. ROBINSON, ROBINSON EYE PROFIT SHARE by JOHN A. ROBINSON, PATRICIA R. ROBINSON IRA by PATRICIA R. ROBINSON, ROCK REVOCABLE TRUST by REINHART F. ROCK, ROSENBERG TRUST by LUDWIG ROSENBERG, BONNIE RUBEN, RAMADA PLAZA HOTEL by BONNIE RUBEN, RUDOLPH P. RUSSO, JEAN M. RUSSO, FRANK S. RUSSO ALESI IRA by FRANK S. RUSSO-ALESI, CATHERINE C. GARDNER by JAMIE G. RUTAN, ALFRED SAKS, WANDA J. SCHAFFNER, WANDA J. SCHAFFNER IRA by WANDA J. SCHAFFNER, GEORGE SCHNEIDER, HILTON SCHWARTZ, JOREMI ENTERPRISES INC P.S.P. by HILTON SCHWARTZ, STUART SCHWARZCHILD,

(caption continued on next page)

KATHERINE RAE CLARK UGTMA by STUART SCHWARZSCHILD, JEAN B. SHERROD, MARGARET W. SHUTTLEWORTH REV TR by MARGARET W. SHUTTLEWORTH, STANLEY SOMMER REV LIVING TRUST by STANLEY SOMMER, FRED SOUSSA, ALEXANDER C. SPEYER JR., MARC SPURR, SUSAN SPURR, MURRAY STADTMAUER, MICHAEL STEETS, MILLICENT STEETS, PAUL STEETS, SARA KAVANAUGH, EILEEN STEETS QUANN, ALLAN H. STEPHENS, SUSAN H. STEPHENS, ARTHUR F. STOLKEY TRUST by ARTHUR F. STOLKEY, ARTHUR F. STOLKEY, THOMAS STOLKEY, STRYK FAMILY INVESTMENTS LTD by STRYK MGMT INC., CHRISTINE STUCKER, DAVID STUCKER, MARY ROSE STUCKER, GILBERT SUNSHINE, WILLIAM H. SWAN, ROBERT B. SYMPSON JR., MR TS ONNON LLC by GEORGE THOLKE, CAROLINE THORNE, DOROTHY THORNE, KATHERINE THORNE, MARILYN TOMESKO, BEN TREADWAY, HANS F. TRUPP, JOHN F. VELTER, WALTER VOLMAR, LARRY WADDINGTON, JOHN W. WALDEN, JOHN W. WALDEN IRA by JOHN A. WALDEN, DAVID C. WATKINS, BRYAN J. WEINSTEIN by CAREN WEINSTEIN, IRVING WELSTED, VIRGINIA WELSTED, DOUGLAS J. WHITAKER, MARY M. WHITAKER, RODNEY L. WHITE TRUST by RODNEY WHITE, WINCHELL FAMILY TRUST by VERNE H. WINCHELL, CHARLES R. WOODS IRA by CHARLES R. WOODS, GAIL D. WOODS MELONI, and SEYMOUR ZALDIN TRUST by SEYMOUR ZALDIN,

Plaintiffs,

-v.-

(caption continued on next page)

6

GOLDMAN SACHS & CO., MELLON BANK, N.A.,
HIGHLAND CAPITAL MANAGEMENT, L.P.,
GENESIS HEALTH VENTURES, INC., and GEORGE V.
HAGER,

                    Defendants.

This is plaintiffs' complaint for fraud and grossly negligent misrepresentation. It is based upon information and belief, except for allegations concerning plaintiffs' own actions, which are based on personal knowledge. Plaintiffs' information and belief is based, inter alia, upon documents, pleadings, testimony, expert valuations and other information produced and/or presented to the Bankruptcy Court, to the creditors committee and to individual creditors and other participants in the bankruptcy proceedings involving defendant Genesis Health Ventures, Inc. ("Genesis") and The Multicare Companies, Inc. ("MC"); upon press releases, financial filings with the SEC, and other publicly available information concerning Genesis and MC; and the investigation of their counsel into these and other matters.

## I. Introduction

1.      Plaintiffs are 275 investors who collectively held over $205 million in debentures issued by Genesis. These debentures were subordinated to about

$1.3 billion in senior debt that Genesis had originally owed to its lending banks. By the summer of 2000, a group of investment banks and other financial institutions, led by defendant Goldman Sachs & Co. ("Goldman"), had purchased from the original lending consortium about half of the Genesis senior debt participations, at a massive discount from face value. Goldman, Highland Capital Partners (another investment firm)("Highland") and the lead senior lender bank, Mellon Bank N.A. ("Mellon"), then conspired with Genesis management to put the Company into bankruptcy and "cram down" a reorganization plan that would eliminate junior creditors (including plaintiffs) and existing stockholders, while conveying virtually total ownership of Genesis to the senior creditors. By the time the reorganization plan was confirmed, the investment banks had acquired over 75% of the senior debt participations, and therefore came away with about 70% of the equity of the reorganized Genesis. In exchange for their cooperation in this vast transfer of wealth, senior members of Genesis management received new "retention bonuses", forgiveness of debt and compensation packages worth millions.

2.      Genesis filed its Chapter 11 bankruptcy petition on June 22, 2000, and a year later it proposed a reorganization plan (the "Plan") that would virtually wipe out all the junior creditors and existing stockholders, force the merger of Genesis and MC, and distribute over 94% of the newly issued common stock of the

8

reorganized, combined entities to the senior creditors.

3.    To justify this transfer of ownership to the senior creditors, the Plan represented that the enterprise value of Genesis was about $1.3 billion, and defendants submitted reports of financial advisors to support that conclusion. They deceived the Bankruptcy Court into accepting that valuation. Having determined that the Company was worth less than the senior creditor claims, the Court approved the Plan. As a result, the senior creditors walked away from the bankruptcy with over 94% of the equity of Genesis, and junior creditors, including plaintiffs, received next to nothing.

4.    The valuations of the Company, on which Court approval of the Plan was based, were based on fraudulent information. The linchpin of the fraud was the "Budgeted EBITDA" projections for fiscal 2001, issued by the Company and provided to its financial advisors, UBS Warburg ("Warburg"). Relying on the Budgeted EBITDA data, the Warburg report valued Genesis at about $1.3 billion.

5.    The Budgeted EBITDA data were well below Genesis' recent historical standards. The Budgeted EBITDA projected that Genesis would earn $158 million in EBITDA in fiscal 2001, and would improve only gradually over the ensuing years. This was far below Genesis' recent performance, which had exceeded $205-210 million for fiscal 1998 and 1999, and which had been on pace to achieve

9

similar results through the first two quarters of fiscal 2000.[1] Defendants were going to have to justify such pessimistic financial projections to the Court.

6. By the time the Bankruptcy Court was prepared to rule on the proposed Plan in August of 2001, fiscal 2001 was almost over; it was too late, at that point, to rely solely on projected EBITDA for periods that were already in the past. By August of 2001, Genesis had reported EBITDA results through the third quarter (ending June 30). The Company therefore sought to confirm the accuracy of the projections by submitting "historical" EBITDA for the trailing 12 month period (the "LTM EBITDA"). Those results coincided *exactly* with the projected EBITDA data: $158 million. The senior creditors then submitted a valuation report prepared by their advisors, Chilmark Partners ("Chilmark"), which used the LTM EBITDA to confirm Warburg's $1.3 billion valuation of the Company.

7. The Court was persuaded by these presentations. On October 2, 2001, it issued an order confirming a joint plan of reorganization for Genesis under Chapter 11 of the Bankruptcy Code (the "Plan"), which cancelled all the Genesis debentures, in exchange for nominal consideration, while transferring over 94% of the equity in the Company to the senior creditors.

---

[1] These EBITDA data are for Genesis on a standalone basis, without including results for its subsidiary MC.

8.     Throughout this process defendants misled both the Court and the junior creditors at every turn. In fact, plaintiffs have subsequently discovered that both the Budgeted EBITDA projections *and* the LTM EBITDA were "cooked", to depress EBITDA and thereby depress the valuation of Genesis. By depressing that valuation, defendants were able to persuade the Bankruptcy Court that it was fair and appropriate to award virtually all the equity in the Company to the senior creditors, to the virtual exclusion of junior creditors, primarily the plaintiffs.

9.     To depress the Genesis EBITDA, Genesis management, at the behest of the senior creditors, engaged in a series of improper accounting maneuvers that collectively cut Genesis' EBITDA by over 30%. Most notably:

- It voluntarily, and *retroactively,* lowered the fees payable to Genesis under various management contracts with MC. Cost to Budgeted and LTM EBITDA: $11.6 million.

- It excluded from EBITDA all sales to Mariner Post-Acute Network, and 10% of sales to HCR Manorcare, based on spurious speculation that this business might, in the future, be lost. In fact, none of this business was lost. Cost to Budgeted and LTM EBITDA: $24.5 million.

- It took unprecedented insurance loss reserves that were not justified by its actual liability exposure, and then improperly charged them all to EBITDA. Cost to LTM EBITDA: at least $13 million.

- It improperly deducted from EBITDA certain non-recurring bankruptcy reorganization costs and costs associated with a

discontinued of an employee health benefit plan. Cost to LTM EBITDA: $16.7 million.

10.    These actions were not bona fide business judgments; rather, they all violated GAAP (Generally Accepted Accounting Principles), generally accepted definitions of EBITDA, SEC and IACPA requirements, and/or with other established or contractual financial principles. It was no coincidence that all these decisions and "adjustments" trended in the same direction: to depress EBITDA and, hence, the calculated reorganization value of the Company. Collectively, these manipulations wiped out hundreds of millions of dollar in valuation. In the absence of these manipulations, Genesis' EBITDA would have substantially exceeded $200 million, the calculated valuation of Genesis would have exceeded $1.6 billion, and the debentureholders would have received Genesis stock equal in value to the par value of their debentures.

11.    Although the perpetrators of these decisions were Genesis senior management -- and, in particular, George Hager, the CFO -- the direct beneficiaries were the senior creditors. As in most bankruptcy proceedings, management of the debtor was completely at the mercy of the senior creditors, who were going to decide which Genesis executives would remain with the Company both during and after the bankruptcy reorganization, and which would go; and who would receive "retention

bonuses" and other lucrative financial packages from the Company, and who would not. In this case, the senior lender power was concentrated in the hand of the seven member Steering Committee, which was dominated by its investment bank members. Shortly after confirmation of the Plan, after the scheme had succeeded and the senior creditors had taken over the Company, the four most senior Genesis executives received financial packages worth, collectively, over $23 million – many times greater than compensation concurrently being paid to executives of comparable companies in the health care industry.

12.    This action does not seek to set aside the Genesis Bankruptcy Plan or re-divide the Genesis "pie". Rather, it seeks to recover from the defendants the hundreds of millions of dollars of damages plaintiffs suffered as a result of defendants' misrepresentations to them, to the public and to the Bankruptcy Court.

## II. **THE PARTIES.**

13.    The 275 plaintiffs collectively held (either directly or through brokerage, retirement, corporate or other accounts) over $205 million of Genesis subordinated debentures on October 2, 2001, the date the Genesis bankruptcy reorganization plan became effective. The Company had issued three series of debentures, as follows (all amounts stated in millions of dollars in face amount):

| Date Issued | Maturity | Amount | Rate |
|---|---|---|---|
| 06/95 | 2005 | $120 | 9.75% |
| 10/96 | 2006 | $125 | 9.25% |
| 12/98 | 2009 | $125 | 9.88% |
| TOTAL | | $370 | |

Many of the plaintiffs are brokerage customers of GMS Investment Advisors, Inc. ("GMS"). Eighty three of the plaintiffs are retirement or family investment accounts. Collectively, the plaintiffs held over 55% of all the debentures outstanding.[2] A complete list of the plaintiffs and their holdings in Genesis debentures is attached as Exhibit 1.

14. Defendant Genesis is a Pennsylvania corporation with headquarters at 101 East State Street, Kennett Square, Pennsylvania. It is a leading provider of health care and support services to the elderly. Including its subsidiary MC, Genesis has two primary business segments: pharmacy services and in-patient services.

15. **Pharmacy Services.** Genesis provides pharmacy services in 41 states through its NeighborCare pharmacy subsidiary. NeighborCare has 59

---

[2] Although the debentures were, by their terms, secured, because the valuation of Genesis ultimately accepted by the Court was less than the senior secured debt, the debentureholders were reclassified as unsecured creditors for purposes of the bankruptcy.

institutional pharmacies and 22 medical supply and home medical equipment distribution centers.

16. **Nursing Care Facilities.** Genesis also provides in-patient services through nursing homes and assisted living facilities, including 33 stand-alone assisted living facilities and 19 transitional care units, located in 15 states. It currently owns, leases, manages or jointly owns 256 nursing care centers with 31,073 beds, located primarily in the eastern United States. It provides rehabilitation services, diagnostic services, respiratory services, hospitality services, group purchasing services and healthcare consulting services.

17. Prior to its merger with Genesis in October of 2001 (as part of the court-approved bankruptcy Plan), MC was a separate entity that was also in the nursing home/assisted living facility industry. Genesis acquired a 43.6% interest in MC in October of 1997, through a leveraged buyout. In that transaction, Eldercare Corporation, owned 56.4% by Texas Pacific Group and other venture capital firms (collectively, "TPG") and 43.6% by Genesis, obtained ownership of MC. At the time of the leveraged buyout, Genesis entered into long term, arm's length agreements to manage MC's facilities and to provide pharmaceuticals and other services to MC. Pursuant to the bankruptcy reorganization Plan, MC became a wholly-owned

subsidiary of Genesis on October 2, 2001.[3]

18. Defendant George V. Hager, Jr. ("Hager") is executive vice president and chief financial officer of Genesis, and held that position during the relevant time period. Since December of 2003 he has also been the chief executive officer of the recently spun off nursing home operations formerly owned by Genesis.

19. Defendant Goldman is a New York limited partnership with headquarters at 85 Broad Street, New York, N.Y. It is one of the largest investment banking firms in the world, and is a member of the New York Stock Exchange. It is a wholly owned subsidiary of Goldman Sachs Group, Inc., a Delaware corporation that also is headquartered at 85 Broad Street. In the months preceding the Genesis bankruptcy, Goldman acquired $175 million in Genesis debt participations, making it by far the largest senior creditor of Genesis. Goldman's average purchase price for these debt participations was about 53¢ on the dollar. Goldman also purchased about $81 million in MC senior debt participations, and thereby became by far the largest senior creditor of MC. Goldman's average purchase price for its MC debt participations was about 48¢ on the dollar. Ultimately, Goldman received through the bankruptcy cash and securities worth far more than 100% of the face value of the

---

[3] For purposes of this complaint, unless the context otherwise requires, all references to "Genesis" for the period up to October 2, 2001, are to the stand-alone company. References to "Genesis" for the period after October 2, 2001 include its wholly owned MC subsidiary.

debts it had purchased.

20. Pursuant to the Plan, Goldman was awarded about 6.6 million shares of Genesis stock, representing about 15.7% of the total shares issued. Since approval of the Plan in October, 2001, Joseph A. ("Jody") LaNassa, III, has been Goldman's designee as one of the six directors of Genesis, and (most significantly) is one of only two members of its compensation committee. Until December of 2002 LaNassa was co-portfolio manager and Vice President-Distressed Bank Debt at Goldman, and since then he has been Managing Director - Special Situations Investing at Goldman.

21. Defendant Mellon is a Delaware corporation with headquarters at One Mellon Center, Pittsburgh, PA. It is one of the largest diversified financial institutions in the world. It was a primary lender for the original revolving credit facilities for both Genesis and MC and held almost $56 million in Genesis senior debt, and over $10 million in MC senior debt, by the time of the bankruptcy. In the bankruptcy, Mellon acted as agent and representative for all the senior creditors, a practice which enabled the other members of the senior lender group to remain virtually anonymous and to conceal the extent to which investment banks, including Goldman, had supplanted the original lending consortium as the actual senior lender group. In the reorganization Mellon acquired shares of Genesis stock and other

17

consideration worth far more than the face value of the debt participations it held.

22.     Defendant Highland Capital Management ("Highland") is an investment advisory firm whose headquarters are in Dallas, Texas. Pursuant to the Plan, Highland received approximately 3 million shares of new Genesis stock, representing over 7% of the total issued and outstanding. Since approval of the Plan in October, 2001, Highland's president, James D. Dondero, has been one of the six directors of Genesis.

## III. FACTUAL ALLEGATIONS

### A. Background: The Investment Banks Snap Up Genesis Debt at a Hefty Discount

23.     Before their bankruptcies, both Genesis and MC had large amounts of outstanding debt. Genesis had outstanding about $120 million of senior secured debt (primarily mortgages), $1.01 billion of other senior debt and $387 million of junior debt, consisting primarily of the three series of debentures held by the plaintiffs.

24.     MC was even more heavily leveraged, relative to its revenues. By September 30, 1999, it had about $776 million of debt outstanding, consisting of $526 million of senior debt and $250 million of junior debt. Much of that debt had been incurred in connection with the leveraged buy-out in 1997.

18

25.     The senior credit facilities for both Genesis and MC had been sponsored by Merrill Lynch, which organized a consortium of over 60 banks, originally led by Mellon Bank, Citicorp, First Union Bank and Nations Bank. By early 2000 the institutions that held the $1.01 billion unsecured Genesis senior debt also collectively held $424 million of the $526 million senior MC debt. However, the loan facilities were completely separate, with no cross guarantees or cross-collateralization.

26.     When these loans were originally extended, the healthcare industry was booming, largely as a result of the generous "cost plus" fee structure used by Medicare to reimburse nursing care facilities for services rendered. Genesis and MC receive most of their income from the federal Medicare and Medicaid programs.

27.     However, the year following the MC leveraged buy-out, Congress drastically revised the system for Medicare reimbursement to nursing care facilities. In 1998 it replaced the old "cost plus" reimbursement formula with a new Prospective Payment System ("PPS"), which pegged reimbursements to a fixed per diem rate that was determined by the patient's diagnosis and the treatments being provided. The three year "phase in" period for the PPS reimbursement formula began on January 1, 1999. Immediately afterwards Medicare reimbursement rates started to decline. Nursing care facilities, which were carrying huge debt loads incurred when the old

"cost plus" system was in effect, were now forced to make their debt payments from a lower revenue base.

28.     These changes had a severe impact on MC, which operated exclusively in the nursing care facility business and which had incurred very large debt obligations in the 1997 leveraged buy-out. By the end of fiscal 1999, it was in default on its debt repayment obligations.

29.     Genesis was more diversified than MC, in large part because of its pharmacy operations; it therefore suffered a lesser, though still significant, impact from the phase in of PPS. By March of 2000, Genesis was still able to meet its debt obligations as they became due, and expected that, if it could stem the cash drain to MC, that it would continue to be able to do so for the foreseeable future. Nonetheless, the risk associated with holding Genesis debt increased, and many of the original lenders to Genesis were eagerly unloaded their Genesis (and MC) debt holdings at significant discounts from par value.

30.     Certain investment banks, and in particular Goldman, perceived this situation as an investment opportunity. Their strategy was to purchase large quantities of "debt participations" from the original lending banks at tremendous discounts and then, using their clout as senior creditors, to force the companies into bankruptcy and seize control.  Goldman, for example, set up an entire division to

20

invest in the debt of distressed companies, headed by Jody LaNassa. This division invested in at least seven distressed companies in the healthcare industry.

31.    Goldman and other investment banks wasted no time in moving in on Genesis (and, in particular, on its Neighborcare pharmacy division, which Goldman viewed as the health-care jewel). The Genesis senior lender group was initially headed by Mellon Bank, but by March, 2000, Goldman and Highland had acquired so many of the debt participations that they were invited to join Mellon on the seven member Senior Lender Steering Committee. By August of 2000 investment banks, including Goldman, had purchased about half the total Genesis and MC senior debt participations from the original lending consortium, at discounts of 30% to 50% from par. Goldman itself had acquired (through its affiliate Goldman Sachs Credit Partners) about $256 million of the Genesis and MC senior debt. Goldman was therefore by far the largest senior creditor of both Genesis and MC, with claims 3 times greater than any other senior creditor, and was therefore able to dominate completely the senior creditor Steering Committee.

32.    Goldman then further enhanced its position of power and influence by (i) underwriting and administering the DIP financing, (ii) underwriting the exit financing, and (iii) becoming the largest holder of the synthetic lease financing facility. In short order, Goldman had assumed the de facto lead position in

the senior creditor group, and controlled all of the Genesis and MC purse strings. Goldman's control over the fate of Genesis continued after Genesis emerged from bankruptcy, to this very day.

### B. The Bankruptcy and Sudden Collapse of Genesis' EBITDA

33.    In the elder care and pharmacy industries, as elsewhere, the primary barometer of financial performance is earnings before interest, taxes, depreciation and amortization ("EBITDA"). EBITDA is not a line item on an income statement, and is not certified or reviewed by outside auditors. Nonetheless, there are standard rules for calculating EBITDA, and Genesis had a practice of announcing its EBITDA results on a quarterly and annual basis. [4]

34.    In both 1998 and 1999 Genesis (excluding MC) had earned over $200 million in EBITDA, which had been more than sufficient to meet its debt payment obligations and to finance its operations. As late as March, 2000, Genesis management had been optimistic about the Company's ability to maintain this level

---

[4] Genesis would announce consolidated EBITDA, including MC, and separate EBITDA for MC on a standalone basis. By subtracting the second figure from the first, and adding back certain entries that were eliminated for accounting purposes, sophisticated investors could, with great difficulty, calculate for themselves Genesis' EBITDA on a standalone basis. For investors, such as plaintiffs, who held Genesis debt securities, the standalone Genesis data was of paramount importance.

of EBITDA performance, despite the changeover in Medicare payment systems.[5]

35.    The first two quarters of fiscal 2000 Genesis was on pace to achieve comparable EBITDA results for fiscal 2000. On February 3, 2000, Genesis announced EBITDA results for the first quarter, showing that it had earned, on a standalone basis, $50.8 million of EBITDA. In its written "Presentation to the Bank Group Regarding Restructuring Considerations", dated March 14, 2000, Genesis management provided a "cash flow summary" that made the following EBITDA projections for the Company (on a standalone basis) (in $ millions):

| 2000 | 2001 | 2002 | 2003 | 2004 | 2005 |
|------|------|------|------|------|------|
| 191 | 205 | 213 | 221 | 230 | 239 |

36.    In a separate document prepared for the same senior lender meeting, Genesis management projected stand-alone EBITDA for the ensuing four months as follows (in $ millions):

| March | April | May | June |
|-------|-------|-----|------|
| $16,896 | $17,529 | $17,862 | $17,895 |

Thus, management was projecting that EBITDA for the third quarter of fiscal 2000

[5] At the Genesis stockholders meeting of March 16, 2000, Michael Walker, chief executive officer of Genesis, reported that its senior lender interest coverage ratio was about 1.8 to 1 and its total interest coverage ratio was 1.4 to 1, ratios which indicated that Genesis would be able to continue meeting its debt obligations. In contrast, management was not optimistic about MC. Walker reported that MC had negative debt coverage of 0.5 and was definitely "under water". It was not expected to meet its senior, much less its junior, debt payments.

(April-June) would exceed the $50 million rate announced for the first quarter. On May 4, Genesis announced EBITDA results for the second quarter (January-March), which showed EBITDA, on a standalone basis, of $51 million. Thus, Genesis was clearly headed towards another year of EBITDA in excess of $200 million.

37.     But once Goldman had achieved a significant position in Genesis debt, and took its seat on the seven member senior lender steering committee, optimism at Genesis suddenly vanished. Almost immediately, on June 22, 2000, both Genesis and MC filed petitions for reorganization under Chapter 11 of the Bankruptcy Code, in the federal bankruptcy court in Wilmington, Delaware.[6] This came as a shock to Genesis bondholders, who had been assured, at the March 16th shareholders meeting, that Genesis was in good financial shape and would be able to continue to service its debt and other obligations.[7] During the ensuing year, Genesis' EBITDA projections and LTM EBITDA both fell through the floor.

---

[6] MC's bankruptcy had been anticipated. Its EBITDA for fiscal 1999 was $73.3 million, just barely enough to cover its annual debt payments of $70 million; but during the first two quarters of fiscal 2000, MC's EBITDA had dropped by half, falling to about $27.7 million on an annualized basis. It was therefore a foregone conclusion that MC's senior debt would ultimately be deemed substantially "impaired".

[7] Specifically, on March 21, 2000, Jim Baker of GMS had spoken with Jack Anderson, a Genesis board member, who reiterated the sentiments expressed at the stockholder meeting, that Genesis was in stable financial condition and did not face any immediate crisis. In April of 2000, Randy Faires of GMS had also spoke to Anderson, who repeated what he had said to Baker, including that the GMS bondholders were in good shape. In contrast, he observed that MC was unable to meet its debt payments.

38. The senior creditors were closely monitoring industry multipliers to determine the effect that particular EBITDA levels would have on the enterprise value of Genesis. On August 2, 2000, Chilmark, which had been retained by the senior creditors, made a written presentation to them in which it set out the Genesis EBITDA projections and the prevailing industry multiples for valuing health care companies. It reported that long-term care companies were currently trading at multiples of 3.1-5.8 times EBITDA, and pharmacy services at multiples of about 5.6.

39. In or about April of 2001, Genesis released a preliminary plan of reorganization that included Budgeted EBITDA projections for fiscal 2001 (ending September 30, 2001) of only $158.443 million, a staggering $50 million below Genesis' past performance.

## C. The Warburg and Chilmark Valuations and the Approval of The Plan

40. In July of 2001, Genesis submitted a final proposed reorganization plan (the "Plan") that posited that the Company, on a stand-alone basis, was worth $200 million less than the senior creditor claims *alone*. The Plan provided for Genesis to merge with MC and for about 94% of the new equity of the combined entity to be conveyed to the senior creditors in satisfaction of their claims.

41. In support of this Plan, Genesis submitted a valuation of the

25