# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---

In re:

GENESIS HEALTH VENTURES, INC., et al.,

Debtors,

Chapter 11

Case No. 00-2692 (JHW)
(Jointly Administered)

---

MELLON BANK, N.A.,

Plaintiff,

v.

NEIGHBORCARE, INC.,

Defendant.

Adv. Proc. No. 04-55080 (JHW)

---

## MELLON BANK, N.A.'s ANSWERING BRIEF IN OPPOSITION TO MOTION TO DISMISS AND OPENING BRIEF IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56 AND FED. R. BANKR. P. 7056

Dated: November 18, 2004

KLETT ROONEY LIEBER & SCHORLING
A Professional Corporation
Teresa K.D. Currier (No. 3080)
Mark R. Owens (No. 4364)
1000 West Street, Suite 1410
Wilmington, DE 19801
(302) 552-4200

-and-

MORGAN, LEWIS & BOCKIUS LLP
Richard S. Toder, Esq.
Menachem O. Zelmanovitz, Esq.
Matthew E. Schernecke, Esq.
101 Park Avenue
New York, NY 10178
(212) 309-6000

Co-Counsel for Mellon Bank, N.A.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... I

PRELIMINARY STATEMENT ................................................................................... 2

STAGE OF PROCEEDINGS ...................................................................................... 3

JURISDICTION AND VENUE ................................................................................... 4

RELEVANT FACTS .................................................................................................. 4

    A. Parties ......................................................................................................... 4

    B. The DIP Agreement ................................................................................... 6

    C. The Haskell Litigation ................................................................................ 9

    D. Mellon's Demand for Indemnification from NeighborCare ........................... 11

ARGUMENT ........................................................................................................... 12

    POINT I .......................................................................................................... 12

        SUMMARY JUDGMENT IS APPROPRIATE WHERE THERE
        IS NO GENUINE DISPUTE AS TO THE MATERIAL
        FACTS AND ISSUES OF LAW ARE DISPOSITIVE .............. 12

    POINT II ......................................................................................................... 14

        UNAMBIGUOUS CONTRACTUAL INDEMNIFICATION
        PROVISIONS MUST BE ENFORCED IN
        ACCORDANCE WITH THEIR TERMS .................................. 14

    POINT III ........................................................................................................ 16

        THE DIP AGREEMENT CLEARLY ENTITLES
        MELLON TO INDEMNIFICATION ON DEMAND
        FOR ITS DEFENSE OF THE HASKELL LITIGATION ...................... 16

            A. The Haskell Complaint Clearly Falls Within the Express
            Indemnification Provision of the DIP Agreement. .......... 16

            B. NeighborCare is Obligated to Indemnify Mellon on
            Demand. ........................................................................ 20

CONCLUSION .......................................................................................................... 22

# TABLE OF AUTHORITIES

## CASES

In re APS Holding Corp.,
282 B.R. 795 (Bankr. D. Del. 2002) .................................................................................13

Advanced Mining Systems, Inc. v. Fricke,
623 A.2d 82 (Del. Ch. 1992) ...........................................................................................21

Aetna Insurance Co. v. Newton,
274 F. Supp. 566 (D. Del. 1967). ....................................................................................14

American Air Filter Co. v. McNichol,
527 F.2d 1297 (3d Cir. 1975) ..........................................................................................14

American Travelers Life Ins. Co. v. AIG Life Ins. Co.,
354 F.3d 755 (8th Cir. 2004) ...........................................................................................18

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) .........................................................................................................13

Becerra v. Asher,
105 F.3d 1042 (5th Cir.), cert. denied, 522 U.S. 824 (1997) ...........................................13

Beloit Power Sys., Inc. v. Hess Oil Virgin Islands Corp.,
757 F.2d 1427 (3d Cir. 1985) ..........................................................................................17

Bethlehem Steel Corp. v. MATX, Inc.,
703 A.2d 39 (Pa. Super. Ct. 1997) ..................................................................................15

Bright v. Westmoreland County,
380 F.3d 729 (3d Cir. 2004) ............................................................................................13

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) .........................................................................................................12

In re Epic Capital Corp.,
290 B.R. 514 (Bankr. D. Del 2003) .................................................................................12

Friction Div. Prods., Inc. v. E.I. Du Pont de Nemours & Co.,
693 F. Supp. 114 (D. Del. 1988), aff'd, 883 F.2d 1027 (Fed. Cir. 1989) .........................12

GB Biosciences Corp. v. Ishihara Sangyo Kaisha, Ltd.,
270 F. Supp. 2d 476 (D. Del. 2003) ..........................................................................14, 20

General Electric Co. v. G. Siempelkamp GmbH & Co.,
29 F.3d 1095 (6th Cir. 1994) ...............................................................................16

Horizon Unlimited, Inc. v. Silva & SNA, Inc.,
No. Civ.A. 97-7430, 1998 WL 476191 (E.D. Pa. Aug. 12, 1998) ....................................15

IKO Monroe, Inc. v. Royal & Sun Alliance Ins. Co. of Canada, Inc.,
No. CIV.A. 00-834 (GMS), 2001 WL 1568674 (D. Del. Dec. 7,
2001)………………..…………………………………………………………………..13

In re Genesis Health Ventures, Inc.,
266 B.R. 591 (Bankr. D. Del. 2001), app. dismissed, 280 B.R. 339 (D. Del. 2002) ......5, 6

Glenn Distribs. Corp. v. Carlisle Plastics, Inc.,
297 F.3d 294 (3d Cir. 2002) ...............................................................................15

In re Hechinger Inv. Co. of Del., Inc.,
No. 99-02261-PJW, Civ. 00-973-SLR, 2004 WL 724960 (D. Del. Mar. 28, 2004) ........19

In re Ikon Office Solutions, Inc.,
277 F.3d 658 (3d Cir. 2002) ...............................................................................13

Kane Gas Light and Heating Co. v. Pennzoil Co.,
95 F.R.D. 531 (W.D. Pa. 1982) ...........................................................................13

Kerrigan v. Villei, 22 F. Supp. 2d 419 (E.D. Pa. 1998) ………………………………..14, 15

Little v. MGIC Indemnity Corp.,
649 F. Supp. 1460 (W.D. Pa. 1986), aff'd, 836 F.2d 789 (3d Cir. 1987) ....................19, 20

Lyncott Corp. v. Chem. Waste Mgmt., Inc.,
690 F. Supp 1409 (E.D. Pa. 1988) …………………………………………………………14

Matsushita Electronic Indus. Co. v. Zenith Radio Corp.,
475 U.S. 574 (1986) .........................................................................................13

Mellon Bank Corp. v. First Union Real Estate Equity and Mortgage Inv.,
951 F.2d 1399 (3d Cir. 1991) .............................................................................15

Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.,
619 F.2d 1001 (3d Cir. 1980) .............................................................................15

Pitney Bowes, Inc. v. Manufacturers Bank,
94CV0137, 1997 WL 289680 (D. Conn. March 7, 1997) ..................................................18

Prisco v. United States,
Civ. A. No. 85-6739, 1990 WL 156319 (E.D. Pa. Oct. 10, 1990), aff'd, 932 F.2d
   960 (3d Cir. 1991) ...................................................................................................13

Ransom F. Shoup & Co. v. Veeder-Root Co.,
No. Civ.A. 92-4939, 1997 WL 786982 (E.D. Pa. Nov. 28, 1997) ...................…...…15, 17

SEC v. First Fin. Group of Texas,
645 F.2d 429 (5th Cir. 1981) ...........................................................................................16

Senior Tour Players 207 Management Co. LLC v. Golftown 207 Holding Co. LLC,
No. Civ.A 20116, 2004 WL 550743 (Del. Ch. Mar. 10,
2004)……………………………………………………………………….... ……….20

Smith v. Bank of New York,
161 B.R. 302 (Bankr. S.D. Fla. 1993) ............................................................................18

Tamarind Resort Assocs. v. Gov't of Virgin Islands,
138 F.3d 107 (3d Cir. 1998) ...........................................................................................14

U.S. v. Webber,
396 F.2d 381 (3d Cir. 1968) ...........................................................................................16

In re United Artists Theatre Co.,
315 F.3d 217 (3d Cir. 2003) ...........................................................................................19

Wedtech Corp. v. Federal Ins. Co.,
740 F. Supp. 214 (S.D.N.Y. 1990) ..................................................................................20

In re Wilmington Hospitality LLC,
No. 01-19401DWS, 2003 WL 21011689 (Bankr. E.D. Pa. Apr. 18, 2003) ....................16

In re WorldCorp, Inc.,
252 B.R. 890 (Bankr. D. Del. 2000) ...............................................................................15

## STATUTES AND RULES

28 U.S.C. § 157(b) ............................................................................................................4

28 U.S.C. §§ 157 and 1334 ..............................................................................................4

28 U.S.C. §§ 1408 and 1409 ............................................................................................4

Fed. R. Bankr. P. 7056…………………………………………………………...………1, 12

Fed. R. Civ. P. 1 ....................................................................................................12

Fed. R. Civ. P. 12(b)(6) ........................................................................................13

Fed. R. Civ. P. 56 .........................................................................................1, 12, 13

## **OTHER AUTHORITIES**

Restatement (Second) of Conflict of Laws § 187 (1971) ..................................................14

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------

In re:                                               Chapter 11

GENESIS HEALTH VENTURES, INC., et al.,

                                              Case No. 00-2692 (JHW)
                                              (Jointly Administered)
               Debtors,

---------------------------------------------------------

MELLON BANK, N.A.,

                    Plaintiff,               Adv. Proc. No. 04-55080 (JHW)

    v.

NEIGHBORCARE, INC.,

                    Defendant.

---------------------------------------------------------

**MELLON BANK, N.A.'s ANSWERING BRIEF IN
OPPOSITION TO MOTION TO DISMISS AND OPENING BRIEF
IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT
PURSUANT TO FED. R. CIV. P. 56 AND FED. R. BANKR. P. 7056**

This Answering and Opening Brief is submitted by Mellon Bank, N.A.

("Mellon") in opposition to the motion to dismiss dated November 4, 2004 (the "Motion

to Dismiss") by Defendant NeighborCare, Inc. ("NeighborCare"), and in support of

Mellon's cross-motion dated November 18, 2004 (the "Cross-Motion") for an order

granting Mellon summary judgment pursuant to Fed. R. Civ. P. 56 and Fed. R. Bankr. P.

7056 on its Complaint for Declaratory Relief filed on September 2, 2004 (the

"Complaint"), directing NeighborCare to indemnify Mellon on demand for all attorneys'

fees and expenses incurred by Mellon in connection with the action entitled Haskell, et al.

v. Goldman, Sachs & Co., et al., Adv. No. 04-53375 (JHW) (the "Haskell Litigation")
pending in this Court.

## PRELIMINARY STATEMENT

All parties agree that the indemnification provisions of the DIP Agreement (as defined below) are clear and unambiguous. Thus, no extrinsic evidence may be introduced to contradict or interpret its terms, which must be enforced as written.

Recognizing this, NeighborCare selectively quotes, ignores or mischaracterizes the express terms of the DIP Agreement and the plain allegations of the complaint in the Haskell Litigation (the "Haskell Complaint"), in a vain effort to evade its unequivocal obligation to indemnify Mellon. Based on this reading, in its Motion to Dismiss, NeighborCare argues that the claims asserted in the Haskell Complaint are outside the scope of the indemnification obligation under the DIP Agreement, and further, that such obligation is not payable until resolution of the Haskell Litigation.

In fact, a simple perusal of the DIP Agreement and Haskell Complaint conclusively demonstrates that:

- Claims "**in any way** relating to the transactions contemplated" by the DIP Agreement - - not, as argued by NeighborCare, just the extension and repayment of loans - - are within the scope of the indemnification obligation. (See Statement Ex. C § 10.06).

- The Haskell Complaint expressly asserts that the loans under the DIP Agreement (the "DIP Loans") were part and parcel of the alleged fraudulent scheme on which

it is based, and thus, the Haskell Litigation clearly constitutes claims "**in any way relating to the transactions contemplated**" by the DIP Agreement. (<u>Id.</u>)

- There is no exclusion from the indemnification obligation for expenses incurred in the defense of claims of gross negligence or willful misconduct - - such exclusion applies only upon and to the extent that liability and expenses are "determined by . . . **final judgment**" to have resulted from Mellon's gross negligence or willful misconduct.

- NeighborCare's indemnification obligations to Mellon are expressly obligations that are payable "**on demand**" under the DIP Agreement. (<u>Id.</u>)

Therefore, Mellon is entitled to judgment as a matter of law declaring that NeighborCare is obligated to indemnify Mellon on demand for all attorneys' fees and expenses incurred by Mellon in defending the Haskell Litigation.

## STAGE OF PROCEEDINGS

On or about January 27, 2004, approximately 275 former holders of Genesis' subordinated debentures commenced the Haskell Litigation against Mellon, NeighborCare (sued as Genesis Health Ventures, Inc. ("<u>Genesis</u>")), Goldman, Sachs & Co., Highland Capital Management, L.P., and George V. Hager in the Supreme Court of the State of New York. The Haskell Litigation was removed to the United States District Court for the Southern District of New York, then transferred by stipulation and order to the United States District Court for the District of Delaware, and referred to this Court by order dated April 27, 2004.

Thereafter, Mellon filed its Complaint initiating an adversary proceeding in this Court against NeighborCare, as successor to Genesis, seeking a declaratory judgment that NeighborCare is obligated to indemnify Mellon upon demand for any liability, costs and expenses, including attorneys' fees, incurred by Mellon in connection with the Haskell Litigation. On November 4, 2004, NeighborCare served its Motion to Dismiss.

No discovery has been taken in this action to date. The parties agree that the contractual provisions at issue are clear and unambiguous. (See Motion to Dismiss ¶¶ 2-3, 16, 20-21; Statement ¶¶ 11-14). Thus, there are no genuine material factual disputes that would require discovery.

## JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the "Standing Order of Referral of Cases to Bankruptcy Judges" for the District of Delaware, dated July 23, 1984.

Venue of this case and the adversary proceeding in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## RELEVANT FACTS

### A. Parties

Mellon is a national banking association headquartered in Pittsburgh, Pennsylvania. (Statement Ex. A ¶ 4). NeighborCare is the successor in interest to Genesis and is a corporation organized under the laws of the Commonwealth of

Pennsylvania. (Id. ¶ 5). Genesis was a "leading provider[ ] of healthcare and support services to the elderly" with operations in most of the eastern United States. In re Genesis Health Ventures, Inc., 266 B.R. 591, 597 (Bankr. D. Del. 2001), app. dismissed, 280 B.R. 339 (D. Del. 2002).

Prior to the filing of its bankruptcy petition, Genesis, Mellon, as administrative agent, and certain lenders entered into that certain Fourth Amended and Restated Credit Agreement dated as of August 20, 1999 (the "Pre-Petition Credit Agreement"). (Id. at 597-98; Statement Ex. B at 4). At the time of the confirmation of Genesis' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Plan"), Genesis' indebtedness under the Pre-Petition Credit Agreement was approximately $1.2 billion. (In re Genesis Health Ventures, 266 B.R at 597-98).

On June 22, 2000, Genesis and certain of its direct and indirect subsidiaries filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court. Id. at 597.

In connection with its bankruptcy case, Genesis entered into a certain Credit and Guaranty Agreement dated as of June 22, 2000 (the "DIP Agreement") with Mellon as administrative agent and the lenders thereunder, whereby Genesis was provided with debtor-in-possession financing in the maximum amount of $250,000,000. (See Motion to Dismiss ¶ 9; Ex. C). At the time of confirmation of its Plan, approximately $200 million was outstanding under the DIP Agreement. (See Statement Ex. D at 28). By order dated September 20, 2001 (the "Confirmation Order"), the Court confirmed the Plan. (See Statement Ex. E).

## B. The DIP Agreement

All of the parties to the DIP Agreement, including Genesis, were sophisticated business entities. (See In re Genesis Health Ventures, 266 B.R. at 597-98). In negotiating the terms and provisions of the DIP Agreement, Genesis and Mellon were both represented by sophisticated and experienced businessmen and counsel. (See, e.g., In re Genesis Health Ventures, 266 B.R. at 597-98; Statement Ex. F at 64-66).

Among other things, the DIP Agreement expressly provided that Genesis indemnify Mellon against claims **in any way** relating to the transactions contemplated by the DIP Agreement and for such indemnification obligation to survive termination of the DIP Agreement and/or payment of the DIP Loans. Specifically, Section 10.06 of the DIP Agreement obligated Genesis to indemnify Mellon as follows:

> The Borrower[1] and each of the Guarantors agree to indemnify and hold harmless the Agent and the Banks and their directors, officers, employees, agents and Affiliates (each an "Indemnified Party") from and against any and all expenses, losses, claims, damages and liabilities incurred by such Indemnified Party arising out of claims made by any Person *in any way relating to the transactions contemplated hereby*, but excluding therefrom all expenses, losses, claims, damages, and liabilities to the extent that they are determined by the final judgment of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of such Indemnified Party. *The obligations of the Borrower and the Guarantors under this Section shall survive the termination of this Agreement and/or the payment of the Loans.* (Statement Ex. C § 10.06) (Emphasis added).

The "transactions contemplated by" the DIP Agreement are not limited to the extension and repayment of the DIP Loans, but, in fact, include a wide array of other

---

[1] In the DIP Agreement, the term "Borrower" is defined as Genesis, the term "Guarantors" is defined as each of the direct and indirect subsidiaries of Genesis that signed the DIP Agreement, and the term "Banks" is defined to include Mellon and the other lenders thereunder. (See Statement Ex. C § 1.01).

activities, duties, obligations and transactions related thereto. For example, Section 10.05 of the DIP Agreement provided:

> Whether or not the transactions hereby contemplated shall be consummated, the Borrower and the Guarantors agree to pay all reasonable out-of-pocket expenses incurred by the Agent (including but not limited to the reasonable fees and disbursements [of its counsel] . . . ) as to which invoices have been furnished, in connection with the ***preparation, execution, delivery and administration of th[e DIP Agreement] and the other Loan Documents, the making of the [DIP Loans] and the issuance of the Letters of Credit, the perfection of the Liens contemplated hereby, the syndication of the transactions contemplated hereby, the reasonable and customary costs, fees and expenses of the Agent in connection with its monthly and other periodic field audits, monitoring of assets*** (including reasonable and customary third-party fees related to the initial and ongoing Borrowing Base examinations), ***the costs of electronic communications services and publicity expenses, and, during the continuance of an Event of Default,*** all reasonable out-of-pocket expenses incurred by the Banks and the Agent in ***the enforcement or protection of the rights of any one or more of the Banks or the Agent in connection with [the DIP Agreement]*** or the other Loan Documents, including but not limited to the reasonable fees and disbursements of any counsel for the Banks or the Agent . . . . ***the obligations of the Borrower and the Guarantors under this Section shall survive the termination of [the DIP Agreement] and/or the payment of the [DIP Loans].*** (Id. § 10.05) (Emphasis added).

The DIP Agreement further obligated Genesis to satisfy its indemnification obligations to Mellon **on demand**. Specifically, Section 2.26 provided as follows:

> Subject to the provisions of Section 7.01, upon the maturity (whether by acceleration or otherwise) of any of the Obligations under this Agreement or any of the other Loan Documents of the Borrower and the Guarantors, the Banks shall be entitled to ***immediate payment*** of such Obligations without further application to or order of the Bankruptcy Court. (Id. § 2.26) (Emphasis added).

Section 10.05 similarly provided that "***[s]uch payments shall be made ... on demand, promptly upon delivery of a statement setting forth such costs and expenses.***" (Id. § 10.05) (Emphasis added).

The term "Obligations" is defined in the DIP Agreement to include, inter alia, the

due and punctual payment of all present and future, fixed or contingent, monetary obligations of Genesis to the Mellon and the lenders thereunder. (Id. § 1.01). Thus, "Obligations" clearly includes all amounts for which Genesis was obligated to indemnify Mellon.

The DIP Agreement also contained a merger or integration clause further evidencing that it represented the entire agreement of the parties with respect to its subject matter. Specifically, Section 10.14 states:

> This [DIP] Agreement represents the entire agreement of the parties with regard to the subject matter hereof and the terms of any letters and other documentation entered into between the Borrower or a Guarantor and any Bank or the Agent prior to the execution of this Agreement which relate to the Loans to be made hereunder shall be replaced by the terms of this Agreement. (Id. § 10.14).

By order dated July 18, 2000, (the "<u>Final DIP Order</u>") this Court approved the DIP Agreement. (Statement Ex. G). Consistent with the provisions of the DIP Agreement, the Final DIP Order expressly provided that Genesis' indemnification obligations to Mellon were not subject to discharge under Section 1141 of the Bankruptcy Code. (Id. ¶ 24). Specifically, paragraph 24 of the Final DIP Order provided:

> The obligations of the Debtors under this Order and the Financing shall not be discharged by the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to Section 1141(d)(4) of the Code, the Debtors have waived such discharge with respect to such obligations. (Id.)

The Confirmation Order approved the Plan and confirmed that Genesis' indemnification obligations to Mellon survived confirmation of the Plan and were not discharged. (See Statement Ex. E). Specifically, the Confirmation Order stated that upon payment of all amounts outstanding under the DIP Agreement, the obligations under the

DIP Agreement terminated "except as otherwise provided in the [DIP Agreement]." (Id. ¶ 46). Thus, as provided in the DIP Agreement, the indemnification obligation to Mellon (see Statement Ex. C § 10.06) survived the confirmation of the Plan.

### C. The Haskell Litigation

The Haskell Complaint asserts claims for fraud, conspiracy to commit fraud and gross negligence based on alleged misrepresentations made by Mellon and the other defendants in connection with the confirmation of the Plan. (See Statement Ex. H). The Haskell Complaint expressly alleges that the DIP Loans were extended for the purpose of furthering or perpetrating the alleged fraud and other claims asserted therein. Specifically, among other things, in subsection k entitled "Increasing the Senior Creditor Claims," the Haskell Complaint alleges:

- "In July of 2000, Goldman, Highland, Mellon and two other senior creditors committed to providing debtor-in-possession (DIP) financing of $200 million for Genesis . . . . The DIP financing proposal was approved by the Bankruptcy Court on July 18, 2000. By the time the Plan was approved, Genesis had drawn down $200 million in DIP financing . . . . Repayment of DIP financing is the highest priority claim in bankruptcy." (Statement Ex. H ¶ 154).

- "Genesis used the proceeds of its DIP borrowings as follows:

| | |
|---|---|
| Repay Tranche II prepetition senior debt: | $40 million |
| Pay pre-petition senior interest: | 44 million |
| Pay post petition senior interest: | 112 million |
| Other | 4 million |

Total:                                    $200 million"

(Id. ¶ 155).

- "Had the senior creditors not interfered, Genesis could have paid these charges out of its regular cash flow, without utilizing the DIP credit facility and without gratuitously increasing the claims of the senior creditors by $200 million." (Id. ¶ 156).

- Mellon, and the other Senior Lenders, "did interfere, effectively forcing Genesis to draw down the DIP credit facility." (Id. ¶ 157).

- "Collectively, these actions stripped Genesis of well over $200 million in operating capital and contributed directly to its need to draw upon the equivalent amount of DIP financing, further assuring that the senior creditors would be deemed impaired." (Id. ¶ 161).[2]

The Haskell Complaint further alleges, among other things, in section 4 entitled "Each Defendant Participated and Had Knowledge of the Misrepresentations," that Mellon acted in concert with Goldman, Sachs & Co. to manipulate the DIP Agreement and DIP Loans in furtherance of the alleged fraudulent scheme. For example, the Haskell Complaint alleges:

- "[I]n July of 2000, [Goldman, Sachs & Co.] took a lead position in the DIP lending facility. After that point Goldman, Mellon and Highland, acting in concert, effectively controlled all of the Genesis purse strings for the duration of the bankruptcy." (Id. ¶ 163).

---

[2] The Haskell Complaint contains a paragraph 161 on page 69 and another paragraph 161 on page 72. This reference is to paragraph 161 on page 69.

- "Under the guise of monitoring compliance with DIP loan covenants, Goldman quarterbacked the entire panoply of financial manipulations detailed in this complaint." (Id. ¶ 165).

- "Moreover, as noted above, Goldman took all the steps necessary to strip Genesis of cash, so that it would be forced to draw down its entire $200 million DIP loan facility." (Id. ¶ 167).

Thus, the claims in the Haskell Complaint clearly and unequivocally come within the scope of "claims . . . in any way relating" to the transactions contemplated by the DIP Agreement. (Statement Ex. C § 10.06). Indeed, it is difficult to conceive how NeighborCare can argue that defense of the Haskell Litigaton does not fall squarely within "protection of the rights of . . . the Agent in connection with the [DIP Agreement]," that are reimbursable on demand under Section 10.05. (Id. § 10.05).

Mellon has incurred substantial attorneys' fees and expenses in connection with defending the Haskell Litigation. Pursuant to the clear and unambiguous language of the DIP Agreement, Mellon is entitled to indemnification for all such fees and expenses.


**D. Mellon's Demand for Indemnification from NeighborCare**

By letters dated February 10, 2004, March 16, 2004 and April 1, 2004, Mellon demanded that NeighborCare reimburse Mellon for expenses incurred by Mellon in defending the Haskell Litigation, including attorneys' fees. (See Statement Exs. J, K and L).

By letters dated March 1, 2004 and March 25, 2004, NeighborCare admitted that the indemnification obligations under the DIP Agreement survived confirmation of the

Plan and were not discharged, but nevertheless declined to indemnify Mellon for its expenses in connection with the Haskell Litigation. (See Statement Exs. M and N).

Thereafter, Mellon filed the Complaint (see Statement Ex. A) seeking a declaratory judgment that NeighborCare is obligated to indemnify Mellon upon demand for any liability, costs and expenses, including attorneys' fees, that it has incurred or will incur in connection with the Haskell Litigation.


## ARGUMENT

### POINT I

### SUMMARY JUDGMENT IS APPROPRIATE WHERE THERE IS NO GENUINE DISPUTE AS TO THE MATERIAL FACTS AND ISSUES OF LAW ARE DISPOSITIVE

Fed. R. Civ. P. 56(c)[2] provides that summary judgment "shall be rendered forthwith" if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is designed "to secure the just, speedy and inexpensive determination of every action." Fed. R. Civ. P. 1; Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); Friction Div. Prods., Inc. v. E.I. Du Pont de Nemours & Co., 693 F. Supp. 114, 120 (D. Del. 1988), aff'd, 883 F.2d 1027 (Fed. Cir. 1989); In re Epic Capital Corp., 290 B.R. 514, 520 (Bankr. D. Del 2003). Summary judgment is appropriate where "the pleadings . . . together with the Statements, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex, 477

---

[2] Fed. R. Civ. P. 56 applies in bankruptcy adversary proceedings by virtue of Fed. R. Bankr. P. 7056.

U.S. at 322; In re Ikon Office Solutions, Inc., 277 F.3d 658, 665-66 (3d Cir. 2002); In re APS Holding Corp., 282 B.R. 795, 799 (Bankr. D. Del. 2002).[4]

Once the moving party has satisfied its burden, the non-moving party has the burden of coming forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party may not rely on speculation, conjecture, conclusory allegations or mere denials to raise a genuine issue of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electronic Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts"); In re Ikon Office Solutions, 277 F.3d at 666.

In addition, a party seeking to oppose a summary judgment motion other than on the merits under Fed. R. Civ. P. 56(f) must specifically demonstrate that there is a need for discovery. See, e.g., Prisco v. United States, Civ. A. No. 85-6739, 1990 WL 156319, at *4 (E.D. Pa. Oct. 10, 1990), aff'd, 932 F.2d 960 (3d Cir. 1991); Kane Gas Light and Heating Co. v. Pennzoil Co., 95 F.R.D. 531, 532 (W.D. Pa. 1982); see also Becerra v. Asher, 105 F.3d 1042, 1048 (5th Cir.), cert. denied, 522 U.S. 824 (1997). In a motion for summary judgment involving interpretation of a clear and unambiguous contract, discovery is unnecessary. See, e.g., IKO Monroe, Inc. v. Royal & Sun Alliance Ins. Co. of Canada, Inc., No. CIV.A. 00-834 (GMS), 2001 WL 1568674, at *5 (D. Del. Dec. 7,

---

[4] In contrast, a motion to dismiss under Fed. R. Civ. P. 12(b)(6) will only be granted where it "clearly appears that no relief can be granted under any set of facts that could be proved consistently with the plaintiffs' allegations." Bright v. Westmoreland County, 380 F.3d 729, 735 (3d Cir. 2004). Thus, even were the Court not to grant the Cross-Motion, the Motion to Dismiss must be denied.

2001). Thus, a dispute involving the interpretation of an unambiguous contract is an appropriate case for summary judgment. <u>Tamarind Resort Assocs. v. Gov't of Virgin Islands</u>, 138 F.3d 107, 110 (3d Cir. 1998); <u>see also</u> <u>GB Biosciences Corp. v. Ishihara Sangyo Kaisha, Ltd.</u>, 270 F. Supp. 2d 476, 481 (D. Del. 2003).

Summary judgment is especially appropriate here. The relevant facts are not in dispute and, as demonstrated below, the clear language of the DIP Agreement mandates that, as a matter of law, the declaratory relief sought in the Complaint should be granted.

**POINT II**

**UNAMBIGUOUS CONTRACTUAL
INDEMNIFICATION PROVISIONS MUST BE
ENFORCED IN ACCORDANCE WITH THEIR TERMS**

Under Pennsylvania law,[5] indemnity is available when set forth in an "express contract to indemnify." <u>Kerrigan v. Villei</u>, 22 F. Supp. 2d 419, 426 (E.D. Pa. 1998). In interpreting an indemnity provision in a contract, the usual rules of contractual interpretation apply. <u>See, e.g.</u>, <u>Lyncott Corp. v. Chem. Waste Mgmt., Inc.</u>, 690 F. Supp. 1409, 1415 (E.D. Pa. 1988). The court's primary purpose is to "give effect to the intent of the parties as reasonably manifested by the language of their written agreement."

---

[5] The DIP Agreement, Section 10.07, provides that Pennsylvania law governs the interpretation of its terms. (<u>See</u> Statement Ex. C § 10.07). Such a contractual choice of law provision is to be enforced. <u>American Air Filter Co. v. McNichol</u>, 527 F.2d 1297, 1299 (3d Cir. 1975); Restatement (Second) of Conflict of Laws § 187 (1971). In any event, the law regarding contractual interpretation and the prohibition on parol evidence is the same in Pennsylvania and Delaware. <u>See, e.g.</u>, <u>Aetna Ins. Co. v. Newton</u>, 274 F. Supp. 566, 571 (D. Del. 1967).

Bethlehem Steel Corp. v. MATX, Inc., 703 A.2d 39, 42 (Pa. Super. Ct. 1997); see also Kerrigan, 22 F. Supp. 2d at 426.[6]

An agreement negotiated between two sophisticated business entities that clearly and unequivocally provides that "one party [will] defend and indemnify claims arising against the other" will be enforced by the courts. Horizon Unlimited, Inc. v. Silva & SNA, Inc., No. Civ.A. 97-7430, 1998 WL 476191, at *2 (E.D. Pa. Aug. 12, 1998); see also Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1009 (3d Cir. 1980) ("[a]bsent illegality, unconscionableness, fraud, duress, or mistake the parties are bound by the terms of their contract").

Moreover, under the parol evidence rule, where a contract is unambiguous, the intent of the parties is manifested and determined from the "four corners of the contract" and no extrinsic evidence is permitted. See, e.g., Glenn Distribs. Corp. v. Carlisle Plastics, Inc., 297 F.3d 294, 300 (3d Cir. 2002). The prohibition on extrinsic evidence is further supported by the presence of a merger or integration clause. See, e.g., Mellon Bank Corp. v. First Union Real Estate Equity and Mortgage Inv., 951 F.2d 1399, 1407 n. 6 (3d Cir. 1991) (applying Pennsylvania law); In re WorldCorp, Inc., 252 B.R. 890, 892 (Bankr. D. Del. 2000).

As described supra, Genesis and Mellon were sophisticated business entities that were represented by experienced and sophisticated counsel at all stages of the DIP

---

[6] Though the parties "disagree about the coverage of the indemnity provision, disagreement between the parties over the proper interpretation of a contract does not necessarily mean that a contract is ambiguous." Ransom F. Shoup & Co. v. Veeder-Root Co., No. Civ.A. 92-4939, 1997 WL 786982, at *2 (E.D. Pa. Nov. 28, 1997) (internal quotations and citations omitted).

Agreement negotiations.[2] As demonstrated herein, the indemnification provisions of the DIP Agreement clearly encompass indemnification of Mellon's expenses incurred in defending against the Haskell Litigation, and thus, must be enforced in accordance with its terms.

## POINT III

### THE DIP AGREEMENT CLEARLY ENTITLES MELLON TO INDEMNIFICATION ON DEMAND FOR ITS DEFENSE OF THE HASKELL LITIGATION

### A. The Haskell Complaint Clearly Falls Within the Express Indemnification Provision of the DIP Agreement.

The DIP Agreement expressly provides for indemnification of Mellon for any claims made **"in any way** relating to the transactions contemplated by" the DIP Agreement. (See Statement Ex. C § 10.06). In its Motion to Dismiss, NeighborCare seeks to evade this obligation by (i) its repeated and deliberate omission of the all-inclusive phrase "in any way," (Motion to Dismiss ¶¶ 3, 10, 17, 21) (ii) its ipse dixit unwarranted limitation of the "transactions contemplated" to the extension and repayment of the DIP Loans, (id. ¶ 21) (iii) its blatant failure to mention that the indemnification exclusion for gross negligence and willful misconduct applies only where such misconduct is determined by **"final judgment,"** (id. ¶ 28-29) and (iv) its fallacious

---

[2] This Court may take judicial notice of the sophistication of the parties and their counsel based upon prior pleadings and submissions before it in the bankruptcy proceedings. See, e.g., General Elec. Co. v. G. Siempelkamp GmbH & Co., 29 F.3d 1095, 1099 (6th Cir. 1994) (taking judicial notice that General Electric is a sophisticated business entity); see also U.S. v. Webber, 396 F.2d 381, 386 n. 10 (3d Cir. 1968) (establishing the long-standing rule that courts in the Third Circuit may look to their own records, including prior docketed materials, in resolving a summary judgment motion); In re Wilmington Hospitality LLC, No. 01-19401DWS, 2003 WL 21011689, at *1 n. 2 (Bankr. E.D. Pa. Apr. 18, 2003); SEC v. First Fin. Group of Texas, 645 F.2d 429, 433 (5th Cir. 1981). Indeed, the Court took judicial notice of its docket in the Confirmation Order. (See Statement Ex. E ¶ 2).

statement that the "Haskell Complaint only mentions the [DIP Agreement] in passing" and "[n]owhere . . . allege[s] any impropriety by . . . Mellon . . . with respect to entering into or carrying out the [DIP Agreement] or in the repayment of the loans thereunder." (Id. ¶ 22). Each of these assertions is plainly refuted by the express provisions of the DIP Agreement and allegations of the Haskell Complaint.

First, the "transactions contemplated" by the DIP Agreement extend well beyond the mere extension and repayment of the DIP Loans, and expressly encompass numerous other activities and reimbursement obligations, including the indemnification obligation at issue here. (See Statement Ex. C §§ 10.05, 10.06). Indeed, the scope of the indemnification provision is further expanded by the all-inclusive description "in any way relating," - - a phrase conveniently ignored by NeighborCare.[8]

That the indemnification provision does not specifically identify the claims covered is of no moment. An indemnification provision may be broadly worded and "need not also recite the specific sorts of loss within its coverage" nor the "theory triggering liability." Beloit Power Sys., Inc. v. Hess Oil Virgin Islands Corp., 757 F.2d 1427, 1430-31 (3d Cir. 1985). The courts have upheld language "clearly and unambiguously" providing for indemnification of a party for losses or liabilities related to an underlying contract, or transactions or events related thereto. Beloit, 757 F.2d at 1430; see also Ransom F. Shoup & Co., 1997 WL 786982, at *2-3 (upholding indemnity

---

[8] NeighborCare asserts that the DIP Loans were entitled to administrative expense status and thus, could not be impacted by any ruling on the Haskell Complaint. (See Statement Ex. N ¶ 23). From this assertion, NeighborCare leaps to the patently unfounded conclusion that the Haskell Complaint cannot be related "in any way to the transactions contemplated by" the DIP Agreement. (Id.) In fact, nothing in the indemnification provision ties coverage thereunder to whether the claim seeks to affect repayment of the DIP Loans. Further, in seeking damages of $200 million, the Haskell Complaint effectively seeks to nullify the Plan and subordinate or recover the full amount of the DIP Loans. (See Statement Ex. I ¶ 77).

provision in settlement agreement covering claims "arising from any liabilities of Seller" or "arising out of or in connection with" its prior conduct of the business); <u>Pitney Bowes, Inc. v. Manufacturers Bank</u>, 94CV0137, 1997 WL 289680, at \*4-5 (D. Conn. March 7, 1997) (indemnification of claims "in any way relating to or arising out of" a lease agreement or any other document related thereto held to include legal fees incurred in defending preference action); <u>Smith v. Bank of New York</u>, 161 B.R. 302, 306 (Bankr. S.D. Fla. 1993) (indemnity provision " for <u>any</u> claims . . . as a result of . . . any other provision of the Plan" held to cover any consequence of the implementation of the plan, including tax consequences).

Even were the indemnification provision as limited as NeighborCare suggests, which it manifestly is not, the Haskell Complaint would still fall well within its scope of coverage. The Haskell Complaint clearly asserts, among other things, that the DIP Loans were intended to be, and were, used in furtherance of the alleged fraudulent scheme on which such claims are based. (<u>supra</u> pp. 9-11 and Statement Ex. H ¶¶ 154-57, 161, 163, 165, 167). Indeed, the Haskell Complaint expressly alleges that Mellon and the other defendants "forc[ed] Genesis to draw down the DIP facility" and thereby "stripped Genesis of well over $200 million in operating capital . . . , further assuring that the senior creditors would be deemed impaired." (Statement Ex. H ¶ 157). Thus, the Haskell Litigation patently asserts claims directly "relating to the transactions contemplated" by the DIP Agreement, and Mellon's defense thereof clearly falls within the "protection of the rights of . . . the Agent in connection with the [DIP Agreement]". (Statement Ex. C § 10.05).

The fact that the claims asserted in the Haskell Complaint are without merit is irrelevant. Mellon is entitled to indemnification for expenses incurred in defending against meritless allegations of fraud and gross negligence. See, e.g., American Travelers Life Ins. Co. v. AIG Life Ins. Co., 354 F.3d 755, 760 (8th Cir. 2004) (applying Pennsylvania law).

Finally, NeighborCare egregiously mischaracterizes the exclusion to indemnification. The only exception to the indemnification provision is liability "determined by the **final judgment** of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct" of Mellon (Statement Ex. C § 10.06). Unless and until such final judgment, Mellon is entitled to indemnification for its attorneys' fees and expenses incurred in defending the Haskell Litigation. See, e.g., Little v. MGIC Indemnity Corp., 649 F. Supp. 1460, 1466 (W.D. Pa. 1986), aff'd, 836 F.2d 789 (3d Cir. 1987) ("[D]efendants are obligated to pay plaintiff's defense costs as those costs become due. Defendants may be entitled to reimbursement from plaintiff if there is a final adjudication of active and deliberate dishonesty on the part of plaintiff.").[2]

---

[2] NeighborCare's suggestion that under In re United Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003), the indemnification provision here somehow violates public policy is patently disingenuous. In fact, the court in United Artists approved a strikingly similar indemnification provision for the debtor's financial advisor that "contained an exception for any Losses that are finally judicially determined to have resulted from the gross negligence, bad faith, willful misfeasance, or reckless disregard of its obligations or duties." Id. at 222. In contrast to debtor's financial advisor who is a fiduciary of the estate, Mellon, as a lender, owed no fiduciary duty to Genesis. See, e.g., In re Hechinger Inv. Co. of Del., Inc., No. 99-02261-PJW, Civ. 00-973-SLR, 2004 WL 724960, at *5 (D. Del. Mar. 28, 2004). Thus, a fortiori, the similar indemnification provision here must be enforced.

**B. NeighborCare is Obligated to Indemnify Mellon on Demand.**

NeighborCare contends that even were it obligated to indemnify Mellon, it need not do so until final resolution of the Haskell Litigation. (Motion to Dismiss ¶¶ 28-29). NeighborCare's contention is, again, refuted by the clear and unambiguous provisions of the DIP Agreement.

The timing of NeighborCare's obligation to indemnify Mellon is set forth in Sections 2.26 and 10.05 of the DIP Agreement. Those provisions expressly entitle Mellon to "immediate payment of such Obligation" and to reimbursement of the "reasonable fees and disbursements" of Mellon's counsel "on demand" upon "delivery of a statement setting forth such costs and expenses." (Statement Ex. C §§ 2.26, 10.05).

Mellon has incurred substantial attorneys' fees and expenses in the defense of the Haskell Litigation. Under the express terms of the DIP Agreement, Mellon is entitled to full reimbursement for its attorneys' fees and expenses **on demand** and need not first await resolution of the Haskell Litigation.[10]  See, e.g., Little, 649 F. Supp. 1460; see also GB Biosciences Corp., 270 F. Supp. 2d at 481-82 (upholding express language in a stock purchase agreement providing that "the indemnifying party shall promptly reimburse the indemnified party for expenses as they are incurred"); Wedtech Corp. v. Fed. Ins. Co., 740 F. Supp. 214, 221 (S.D.N.Y. 1990) (provision requiring indemnification of all loss, including defense costs, required reimbursement "as soon as the attorneys' fees are incurred") (citing cases).

The two cases cited by NeighborCare simply do not support its contention that Mellon's indemnification claim is premature. In Senior Tour Players 207 Management

---

[10] Of course, even assuming arguendo that an adverse final judgment is rendered against Mellon, Mellon is able to respond in full to NeighborCare.

<u>Co. LLC v. Golftown 207 Holding Co. LLC</u>, No. Civ.A 20116, 2004 WL 550743 (Del. Ch. Mar. 10, 2004), the court held that the applicable agreement entitled plaintiffs to the advancement of their litigation expenses, including attorneys' fees, and that defendant could not delay payment thereof until a judicial determination as to whether the plaintiffs' conduct fell within an exclusion to the indemnification obligation. Thus, the Court's holding, in fact, directly supports Mellon's claim here.

<u>Advanced Mining Systems, Inc. v. Fricke</u>, 623 A.2d 82 (Del. Ch. 1992), is totally inapposite. That case involved the interpretation of corporate by-laws under Delaware law. In contrast to the clear contractual provision here, the court merely found there to be no provision in the by-laws as to when indemnification of corporate fiduciaries had to be paid.

In sum, the clear contractual language here entitles Mellon to reimbursement of its litigation expenses **on demand.** Accordingly, summary judgment should be awarded to Mellon.

## CONCLUSION

For the reasons set forth above, the Court should deny the Motion to Dismiss, grant the Cross-Motion in its entirety and award judgment to Mellon for the declaratory relief sought in the Complaint, together with such other and further relief as is just and proper.


Dated: November 18, 2004

KLETT ROONEY LIEBER & SCHORLING
A Professional Corporation


By: _____
      Teresa K.D. Currier (No. 3080)
      Mark R. Owens (No. 4364)
      1000 West Street, Suite 1410
      Wilmington, DE 19801
      Telephone: (302) 552-4200
      Facsimile: (302) 552-4295

          - and -

      Richard S. Toder, Esq.
      Menachem O. Zelmanovitz, Esq.
      Matthew E. Schernecke, Esq.
      MORGAN, LEWIS & BOCKIUS LLP
      101 Park Avenue
      New York, NY 10178
      Telephone: (212) 309-6000
      Facsimile: (212) 309-6001

      Co-Counsel for Mellon Bank, N.A.